UNITED STATES of America, Appellee,

v.

Paul VARSALONA, Appellant.

No. 82–2444.

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1983.
Filed June 29, 1983.

Robert G. Ulrich, U.S. Atty., W.D. Mo., Kansas City, Mo., Richard J. Marien, U.S. Dept. of Justice, Washington, D.C., for appellee.

Benjamin D. Entine, Kansas City, Mo., for appellant.

Before BRIGHT and FAGG, Circuit Judges, and JONES,* District Judge.

FAGG, Circuit Judge.

Paul Varsalona appeals his conviction for committing perjury before a grand jury, in violation of 18 U.S.C. § 1623. On appeal he contends that the trial court committed error in (1) failing to declare a mistrial after prejudicial references to organized crime were made; (2) denying the jury's request to have identification testimony read; and (3) denying his motion for judgment of acquittal. We affirm.

Varsalona's conviction stems from an incident in which two police officers observed Carl Civella, a convicted felon, purchasing a firearm. The officers had by chance spotted Civella and a female companion, who they recognized as Rita Armilio, approaching them in oncoming traffic in a beige Lincoln Continental which they knew belonged to Civella. The officers followed Civella and Armilio to a sporting goods store where, from a distance of five to six feet, one of the officers observed Civella hand the clerk a piece of paper, heard the clerk tell Civella the gun was available, and saw Civella examine the weapon. According to the clerk, the man identified by the officers as Civella paid for the handgun and some ammunition with nearly $300 in cash. Although the clerk does not recall which party picked up the package containing the handgun, Civella exited the store carrying a paper sack and passed by the officers at a close distance.

A federal grand jury investigated Civella's role in the incident for possible violations of 18 U.S.C.App. § 1202(a) and 18 U.S.C. § 922(h), for possession of firearms by a felon, Carl Civella. Paul Varsalona testified before the grand jury that he was the person who had accompanied Rita Armilio on the day in question, not Carl Civella. Photographic exhibits received at trial suggest that Varsalona and Civella are similar in physical appearance. Varsalona claimed that because his own car was in the shop he had borrowed Civella's car. Armilio corroborated Varsalona's testimony before the grand jury and her conviction for perjury in connection with this testimony was recently affirmed by this court. *See United States v. Armilio,* 705 F.2d 939 (8th Cir.1983). The government brought this action for perjury against Varsalona and the sole issue at trial was whether Varsalona had stated falsely to the grand jury that he was the man who had accompanied Armilio to purchase the gun on the day in question.

Varsalona contends that the district court committed error in failing to declare a mistrial after certain references were made to organized crime. Carl Civella is reported to be a leader of organized crime in the Kansas City area. All members of the jury acknowledged familiarity with the Civella family name. Varsalona argues that his trial was unfair because various statements during the trial cast a specter of organized crime over the proceedings. We disagree.

Varsalona complains of the testimony of federal agent Curd, who was called as an adverse witness by the defense. Asked how he was employed, Curd responded that he was a special agent with the "United States Treasury Department, Bureau of Alcohol, Tobacco and Firearms, assigned to work with the Kansas City Strike Force responsible for the Bureau's thrust on organized crime." As the trial judge reasoned, defense counsel called the witness and asked the question, knowing the witness' occupation. The witness' response was accurate

* The Honorable John B. Jones, United States District Judge for the District of South Dakota, sitting by designation.

and did not go beyond the scope of the question. Later, Curd was asked about the pretext that was used to obtain the gun from Rita Armilio: the agent obtained the gun for fingerprinting by telling her there was reason to believe the gun had been used in prior criminal activity. Varsalona's counsel characterized the pretext as a "lie." Curd explained in cross-examination that such a tactical approach was necessary "to try to out-think her because of her affiliation with Civella and the entire Civella organization." Curd's explanation was given in response to a question not objected to and in context the government was merely answering the defense counsel's charges of government impropriety in obtaining the weapon. Also, Curd was referring only to the connection of Armilio, not Varsalona, to the "Civella organization." Moreover, it seems doubtful that this sole reference to the "Civella organization" was startling when it is considered that everyone on the jury panel was already familiar with the Civella family name. There is no "per se" rule that any mention of organized crime renders the entire trial unfair. *See United States v. Polizzi,* 500 F.2d 856, 888 n. 54 (9th Cir.1974), *cert. denied,* 419 U.S. 1120, 95 S.Ct. 803, 42 L.Ed.2d 820 (1975); *United States v. Lazarus,* 425 F.2d 638, 640–41 (9th Cir.), *cert. denied,* 400 U.S. 869, 91 S.Ct. 102, 27 L.Ed.2d 108 (1970); *Volpicelli v. Salamack,* 447 F.Supp. 652, 663 (S.D.N.Y.1978). Organized crime was not a focal point of the challenged testimony and no attempt was made by the government or witness Curd deliberately to link Varsalona with organized criminal activity. The trial judge did not abuse his discretion in denying the respective motions for mistrial with respect to these remarks. *See United States v. Bentley & Platt,* 706 F.2d 1498 at 1510 (8th Cir.1983); *United States v. Flemino,* 691 F.2d 1263, 1267 (8th Cir.1982); *United States v. Maestas,* 554 F.2d 834, 839 (8th Cir.), *cert. denied,* 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1070 (1977).

Varsalona also complains that a police officer, in response to a question concerning his duties on the day in question, stated that he was "[m]aking observations for the Intelligence Unit in regard to organized crime." Again, this was an accurate statement and relevant to understanding the officer's testimony. Also, it had no relation to whether Varsalona was a member of organized crime—the officer testified he was following Carl Civella. Finally, no motion for mistrial or request for a curative instruction was made with respect to this remark. Varsalona complains of one other allegedly improper reference, asking him on cross-examination whether Civella was a "family man." In context, this was properly understood in its usual meaning and no timely objection or motion for mistrial was made. Considered as a whole, the trial was remarkably free from references to organized crime and defense counsel's complaints of "trial by insinuation" are not borne out by the record. This is not a situation where the trial court should have ordered a mistrial upon its own motion. *United States v. Beran,* 546 F.2d 1316, 1319 (8th Cir.1976), *cert. denied,* 430 U.S. 916, 97 S.Ct. 1330, 51 L.Ed.2d 595 (1977).

Varsalona next contends that the trial court committed error in denying the jury's request, several hours after it had retired to deliberate, for a reading of the testimony of Dale Svaglic and Michael Scott. Svaglic, a government witness, was the clerk at the sporting goods store, and although he testified to the resemblance between Civella and Varsalona and the male customer, he was unable to make an identification. Scott, a defense witness, had testified that he had seen Varsalona with a beige Lincoln Continental on the day in question, and that Varsalona had told him "he was going to take some girl to a sporting goods store." Varsalona argues that because the requested eyewitness identification testimony was so critical in this case he was entitled to have the testimony read to the jury as a matter of right.

The decision to read testimony requested by the jury rests within the sound discretion of the trial judge. *United States v. Bassler,* 651 F.2d 600, 603 (8th Cir.1981); *United States v. Peltier,* 585 F.2d 314, 334 (8th Cir.1978), *cert. denied,* 440 U.S. 945, 99

S.Ct. 1422, 59 L.Ed.2d 634 (1979). In this instance, the trial judge expressed a proper concern that granting the request might tend to overemphasize the testimony of these two witnesses. The jury had heard a broad range of conflicting testimony concerning the identity of the man who had accompanied Rita Armilio. The most important government witnesses were the two police officers who testified that they saw Civella at the sporting goods store. Scott was only one of five witnesses called by the defense on the identification issue. Edith Weiss, the owner of a knit shop to which the police had followed Civella and Armilio after the gun purchase, was the only witness to see Varsalona and Armilio together. She testified that she saw Varsalona with an attractive young woman waving to her from in front of her shop. Nick DeFeo testified that he had taken Varsalona to the repair shop on the day in question to get his own vehicle. David Worth, the manager of the repair shop, testified that Varsalona had brought his car in on the day in question. Additionally, Varsalona testified on his own behalf and told the jury that he, not Civella, took Armilio to the store. The testimony that the jury requested, although important, was not so critical as Varsalona suggests. Svaglic, who earlier had identified Civella, stated at trial that he could not remember the identity of the gun purchaser. Scott identified Varsalona at a local market with a beige Lincoln, but the importance of this testimony was diminished by the fact that DeFeo and Worth had already testified that Varsalona's own car was in the shop. Unlike Edith Weiss, Scott did not see Varsalona with Armilio, and he did not know where Varsalona went after he had seen him at the market. Given the divergence of the identification testimony which the jury heard, the reading of the testimony of just two of the several witnesses might have given their testimony a misplaced emphasis in relation to the testimony of the officers, Varsalona and Weiss. The trial judge was presented with a delicate question involving the balancing of important and competing interests. We cannot say that the judge abused his discretion in deciding not to read the requested testimony, or that his refusal created unfairness to Varsalona. *United States v. Bassler, supra,* 651 F.2d at 603.

Varsalona's last alleged point of error is the trial court's denial of his motion of acquittal. Varsalona argues that the government failed to present sufficient evidence from which the court could find that his allegedly false declarations were material to a grand jury investigation. To show a violation of 18 U.S.C. § 1623 the government has the burden of proving that the defendant's statements were material to issues before the grand jury. *United States v. Ostertag,* 671 F.2d 262, 264 (8th Cir.1982). The question of whether the government has met its burden on the issue of materiality is for the court to decide as a matter of law. *United States v. Armilio, supra,* at 941; *United States v. Ostertag, supra,* 671 F.2d at 265. The test for determining materiality is whether the allegedly perjurious statement tends to impede or hamper the course of the investigation by the grand jury. *United States v. Phillips,* 540 F.2d 319, 328 (8th Cir.), *cert. denied,* 429 U.S. 1000, 97 S.Ct. 530, 50 L.Ed.2d 611 (1976).

Varsalona argues that Rita Armilio was purchasing the gun for herself, and therefore it is immaterial who was accompanying her. Indeed there is evidence that Armilio was purchasing the gun for herself; she took an active role in the purchase, the gun was found at her residence, and she lived in a high crime neighborhood. However, there was clearly enough evidence to trigger an investigation of Civella's possible purchase of the firearm; it was Civella who requested, examined and paid for the gun in cash, and the officers saw Civella exit the store with a sack in his hand and later enter Armilio's apartment carrying the same sack. Plainly, Varsalona's false statements were material to the investigation of Civella. If his testimony had been true, the investigation would not merely have been impeded, it would have been terminated. *Cf. United States v. Armilio, supra,* at 942.

Accordingly, the judgment is affirmed.

Affirmed.