UNITED STATES of America, Appellee,

v.

James Anthony MICHAELS, III, Appellant.

No. 82–2496.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1983.

Decided Feb. 10, 1984.

Rehearing and Rehearing En Banc Denied March 6, 1984.

Thomas E. Dittmeier, U.S. Atty., St. Louis, Mo., Frederick R. Buckles, Asst. U.S. Atty., St. Louis, Mo., for appellee.

London, Greenberg & Pleban, Norman S. London, Lawrence J. Fleming, St. Louis, Mo., for appellant.

Before BRIGHT, ARNOLD and FAGG, Circuit Judges.

FAGG, Circuit Judge.

James Anthony Michaels appeals from his jury conviction for conspiracy to bomb an automobile in violation of 18 U.S.C. § 844(i). Michaels initially challenges the existence of federal jurisdiction. He claims that the government has not sufficiently established that the vehicle bombed was used in an activity affecting interstate commerce. Michaels also argues that the trial court committed error in (1) refusing to enter a judgment of acquittal in that the evidence presented was insufficient to establish Michaels' participation in a conspiracy to bomb Paul Leisure's automobile; (2) admitting evidence seized from a trash bin, an apartment, and a storage locker; (3) admitting evidence of a prior car bombing in which Michaels' grandfather was killed; and (4) refusing to declare a mistrial when the government, during closing argument, referred to the bombing victim as a gangster. We find Michaels' contentions to be without merit, and thus affirm the judgment of the district court.

I. Jurisdiction

Michaels initially contends that federal jurisdiction is lacking under 18 U.S.C. § 844(i). Section 844(i) provides:

> (i) Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned * * *.

Michaels argues that the government did not sufficiently establish that the vehicle bombed, i.e., Leisure's privately-owned Cadillac automobile, was being used to conduct union business that affected interstate commerce. We cannot agree.

Although this court has not previously dealt with a sufficiency of the evidence question with respect to the commerce requirement of section 844(i), we are guided by the decisions of our sister circuits. Sister circuits have broadly construed the requirement that the "target property" be used in an activity affecting interstate commerce. *United States v. Andrini,* 685 F.2d 1094, 1095–96 (9th Cir.1982); *United States v. Barton,* 647 F.2d 224, 231–33 (2d Cir.), *cert. denied,* 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981); *United States v. Gross-*

*man,* 608 F.2d 534, 537 (4th Cir.1979); *United States v. Schwanke,* 598 F.2d 575, 577–78 (10th Cir.1979); *United States v. Sweet,* 548 F.2d 198, 200–02 (7th Cir.), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1653, 52 L.Ed.2d 361 (1977). Following the directive of the statute's legislative history, the courts have readily applied section 844(i) to business-related property used in an activity affecting interstate commerce. H.R.Rep. No. 1549, 91st Cong., 2d Sess., *reprinted in* 1970 U.S. Code Cong. & Ad.News 4007, 4046–47. We, too, broadly construe the language of section 844(i).

 The government's uncontradicted evidence sufficiently demonstrates that the Cadillac automobile was used by Leisure to conduct union business. Irene Jones, an employee of Laborers International Union, Local No. 42, testified that Paul Leisure was employed by the union as a field organizer. In this capacity, Leisure traveled to various job sites for the purpose of enrolling new members in the union and collecting money owed the union by current members. The union paid Leisure a $200 per month allowance as reimbursement for using his personal automobile to conduct union business. Clearly, use of the automobile was an integral and necessary part of Leisure's job assignment and was not merely a means of traveling to and from work. *Cf. United States v. Monholland,* 607 F.2d 1311, 1314–16 (10th Cir.1979) (pickup truck used by state court judge to travel back and forth from home to court did not affect commerce).

Michaels argues that even assuming Leisure used a personally-owned automobile to conduct union business, there was no evidence to demonstrate that Leisure's Cadillac automobile was used for that purpose. Evidence obtained at the bomb scene, however, dictates a contrary conclusion. An agent of the Bureau of Alcohol, Tobacco and Firearms testified that upon his arrival at the bomb scene, he took custody of a briefcase that was lying to the left rear of Leisure's Cadillac. The briefcase contained numerous forms relating to the business of Laborers Local 42: a booklet containing membership application forms with Paul Leisure's name on the outside; a receipt book for recording collection of money from union members; dues check-off forms which authorize the union to deduct dues directly from a member's paycheck; and finally, numerous booklets containing agreements that Local 42 has with other organizations and associations.

The government's uncontradicted evidence also sufficiently demonstrates that the business Leisure accomplished by use of the Cadillac automobile affected interstate commerce. Laborers Local 42 has substantial dealings with the International Union office in Washington, D.C. Equipped with membership application forms, a cash receipt book, and dues check-off forms, Leisure used the Cadillac automobile to travel to job sites for the purpose of enrolling new members in the union and collecting money owed the union by its members. Laborers Local 42, in turn, provided the International Union with a listing of new members for initiation purposes and paid the International Union a monthly per capita tax on its members. While the effect on interstate commerce accomplished through Leisure's use of the automobile may seem slight, "his contribution, taken together with that of many others similarly situated, is far from trivial." *Wickard v. Filburn,* 317 U.S. 111, 127–28, 63 S.Ct. 82, 90, 87 L.Ed. 122 (1942). We believe that the government has sufficiently connected the automobile to an activity affecting interstate commerce, as required by section 844(i).

## II. Sufficiency of the Evidence

 Maintaining that the evidence presented at trial was not sufficient to establish his knowing participation in a conspiracy to bomb Paul Leisure's automobile, Michaels argues that the district court committed error in refusing to enter a judgment of acquittal. To convict a defendant of criminal conspiracy, the government is obligated to prove that "the individual entered an agreement with at least one other person, that the agreement had as its objective a violation of the law, and that one of those in agreement committed an act in

furtherance of the objective." *United States v. Evans,* 697 F.2d 240, 244–45 (8th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 1779, 76 L.Ed.2d 352 (1983). The only element of a criminal conspiracy at issue on this appeal is Michaels' conspiratorial membership. "[T]he law in this Circuit is quite clear that an individual becomes a member of a conspiracy when the person knowingly contributes his or her efforts in furtherance of the objectives of the conspiracy . . . ." *United States v. Burchinal,* 657 F.2d 985, 990 (8th Cir.), *cert. denied,* 454 U.S. 1086, 102 S.Ct. 646, 70 L.Ed.2d 622 (1981). Further, "once the government has established the existence of a conspiracy, even slight evidence connecting a particular defendant to the conspiracy may be substantial and therefore sufficient proof of the defendant's involvement in the scheme." *United States v. Overshon,* 494 F.2d 894, 896 (8th Cir.), *cert. denied,* 419 U.S. 853, 95 S.Ct. 96, 42 L.Ed.2d 85 (1974).

■ In reviewing the sufficiency of the evidence underlying Michaels' conviction, we are obligated to view the evidence in the light most favorable to the jury verdict, accepting as established all reasonable inferences tending to support the verdict rendered. *United States v. Jackson,* 714 F.2d 809, 812 (8th Cir.1983); *United States v. Pruitt,* 702 F.2d 152, 155 (8th Cir.1983). Finally, circumstantial evidence is no less probative than direct evidence and a conviction based solely on circumstantial evidence is subject to the same principles of review. *United States v. Jackson,* 549 F.2d 517, 530 (8th Cir.1977).

■ Our review of the record reveals a substantial amount of circumstantial evidence from which a reasonable jury could have found beyond a reasonable doubt that Michaels knowingly participated in a conspiracy to bomb Leisure's automobile. *United States v. Brim,* 630 F.2d 1307, 1311 (8th Cir.1980), *cert. denied,* 452 U.S. 966, 101 S.Ct. 3121, 69 L.Ed.2d 980 (1981). In March of 1981, Milton Schepp gave Norman Steibel $3500 to purchase two cars. After registering the Chevrolet and Ford purchased by him in fictitious names, as directed by

Schepp, Steibel turned the cars over to Schepp. In April 1981, Michaels contacted William Albright and requested that he rent an apartment for Michaels using a fictitious name. Michaels provided Albright $1100 cash to pay the rent six months in advance. Albright rented an apartment at 2706 Arnold Tenbrook in the name of Robert C. Simmons and then gave the apartment key to Michaels.

Testimony established that during the spring and summer of 1981, both cars purchased for Schepp, a car bearing Schepp's personalized license plate, and a car registered to John Michaels, the appellant's brother, were seen parked in front of the apartment rented for Michaels. David Valdez, who lived approximately a block away from the bomb scene, testified that on the morning of the bombing, he noticed two men sitting in a green Chevrolet in front of his home. Their behavior raised his suspicions and because he did not recognize the car or the two men in it, Valdez made note of the vehicle's license number. The car that Valdez saw was the Chevrolet purchased by Steibel for Milton Schepp and the same car that had been seen parked in front of Michaels' apartment on numerous occasions. Testimony at trial indicated that the bomb was set off by a remote control device.

After the bombing, agents of the Bureau of Alcohol, Tobacco and Firearms, who were aware of the fact that the car near the bomb scene had also been seen at the Tenbrook Terrace apartments, searched a communal trash bin located on the apartment grounds. Located within the bin were two brown plastic trash bags, each containing a white plastic trash bag. Among the items contained in the first plastic bag were: a spoon with explosive residue adhering to it; surgical gloves; alligator clips; duct tape; an electronic connector; a piece of wire; and finally, some pieces of styrofoam which when fitted together resembled packaging for an electronic remote control device. Among the items contained in the second plastic bag were: surgical gloves of the same variety

found in the first plastic bag; a magazine on which was left a fingerprint of the appellant Michaels and upon which was drawn a diagram that resembled the neighborhood surrounding the bomb scene; a letter and phone bill addressed to 2706 Arnold Tenbrook; and finally, a white cap with blue trim that resembled the hat David Valdez described as being worn by the driver of the car parked outside his house on the day of the bombing.

In June of 1981, Albright rented a large storage locker in Fenton, Missouri. When Albright was finished using the locker, Michaels offered to pay for its continued rental if Albright would allow him to use it. Albright agreed and continued to pay A-Storage Inn for the rental of the locker and Michaels in turn reimbursed Albright. After the bombing, agents obtained a search warrant for the storage area. Located within the locker was the Ford automobile that had been purchased by Steibel for Schepp.

Following the bombing on August 11, Albright, having heard that law enforcement officials suspected he was connected with the rental of the apartment at 2706 Arnold Tenbrook, contacted Michaels to set up a meeting. Albright testified that upon meeting with Michaels, Michaels commented, "Boy, they are fast," and then reassured him that the apartment "had been wiped clean" and that "there was nothing there." After being contacted by the FBI, Albright again arranged a meeting with Michaels. At the second meeting, Albright testified that Michaels told him to "keep quiet," to "just not know anything" and to remain calm because Michaels' sources in the city said the police are "just fishing."

Upon reviewing the record, we find the evidence sufficient to sustain Michaels' conviction for conspiracy to bomb Paul Leisure's automobile.

### III. Search of the Trash Bin, Apartment and Storage Locker

Agents of the Bureau of Alcohol, Tobacco and Firearms searched a trash bin located on the Tenbrook Terrace apartment grounds. Michaels, claiming a legitimate expectation of privacy in the contents of the garbage bags placed in the bin, argues that the warrantless search of the bags violated his fourth amendment right against unreasonable searches and seizures. *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978) (citing *Katz v. United States,* 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967)). We disagree.

Tenbrook Terrace is a sixteen-unit complex consisting of four one-story ranch style buildings all sitting parallel to a drive that runs the full length of the complex. There are four apartments in each building, and the area immediately in front of the buildings is paved for parking. The trash bin sits approximately a block from the entrance to the apartments and at the opposite end of the drive. Apartment 2706 is located within the apartment building nearest the entrance, thus the other three apartment buildings separate apartment 2706 from the bin. The bin, located in a wholly open area accessible to all of the tenants, their guests, and invited and uninvited visitors, is fully visible, unlocked, unfenced, and unrestricted in its use by any posted signs. It could not reasonably be claimed that the bin is situated within a zone of privacy connected with the living units, lawns, or recreational areas of the complex.

Those circuits that have considered the issue of whether a person has a legitimate expectation of privacy in trash placed for collection in a public area, in close proximity to a public way, or in an outdoors communal trash container serving an apartment building, have consistently denied fourth amendment relief. *See United States v. Kramer,* 711 F.2d 789, 791–94 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 397, 78 L.Ed.2d 339 (1983) (trash bags removed by investigators from just inside knee-high fence running along street curb); *United States v. Terry,* 702 F.2d 299, 308–09 (2d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983) (trash bags placed on public sidewalk adjacent to apartment); *United States v. Biondich,* 652 F.2d 743, 744–45 (8th Cir.), *cert. denied,* 454 U.S.

975, 102 S.Ct. 527, 70 L.Ed.2d 395 (1981) (trash placed in cans near the alley of Biondich's house for collection by a private garbage hauling service); *United States v. Reicherter,* 647 F.2d 397, 398–99 (3d Cir. 1981) (trash placed in an area outside of fence surrounding Reicherter's property and in an area accessible to the public and used by the public for walking); *United States v. Vahalik,* 606 F.2d 99, 100–01 (5th Cir.1979), *cert. denied,* 444 U.S. 1081, 100 S.Ct. 1034, 62 L.Ed.2d 765 (1980) (trash bags placed at edge of the street in front of Vahalik's home for collection); *United States v. Shelby,* 573 F.2d 971, 973–74 (7th Cir.), *cert. denied,* 439 U.S. 841, 99 S.Ct. 132, 58 L.Ed.2d 139 (1978) (at direction of the FBI, garbage men collected and searched through trash placed in cans located behind Shelby's garage and immediately inside a low fence adjoining public alley); *Magda v. Benson,* 536 F.2d 111, 112–13 (6th Cir.1976) (postal inspectors searched trash bags placed on the tree lawn adjacent to Magda's residence); *United States v. Mustone,* 469 F.2d 970, 972–73 (1st Cir.1972) (trash bags placed on public sidewalk several doors away from premises); *United States v. Dzialak,* 441 F.2d 212, 214–15 (2d Cir.), *cert. denied,* 404 U.S. 883, 92 S.Ct. 218, 30 L.Ed.2d 165 (1971) (security investigator searched trash placed in area between street and sidewalk of Dzialak's home); *United States v. Minker,* 312 F.2d 632, 634–35 (3d Cir.1962) (agents, with cooperation from garbage collector, examined contents of trash placed in a communal bin located outside apartment building). As stated by the court in *Reicherter, supra,* 647 F.2d at 399,

> Having placed the trash in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it, it is inconceivable that the defendant intended to retain a privacy interest in the discarded objects. If he had such an expectation, it was not reasonable.

We have no trouble concluding that the trash from Michaels' apartment was placed for collection within the framework of the cited authorities. The trash bin, being the designated pick-up point for scheduled semi-weekly garbage collection, was sitting in an open, unsecured area nearly a block away from Michaels' apartment. The trash bags, when placed in the bin, were intermingled with the trash of others, and there was no indication that special arrangements were made for the disposition of any individual tenant's trash. Although Michaels may have believed that the evidence of the crime was safe from inspection by others and would be conveniently disposed of by the garbage collectors, his beliefs were not reasonable. *Shelby, supra,* 573 F.2d at 973–74. Other tenants, guests, and visitors, perhaps curious about the contents of the trash within, could easily have rummaged through the bin. The evidence permits no other conclusion than that Michaels had no legitimate expectation of privacy in the contents of the garbage bags placed in the trash bin.

Michaels also claims that the district court committed error in denying his motion to suppress evidence obtained during a search of the apartment at 2706 Arnold Tenbrook and of the storage locker located in Fenton, Missouri. Challenging the sufficiency of the affidavits submitted in support of the search warrant applications, Michaels argues that they fail to support a probable cause determination that components of a destructive device would be discovered.

Under the "totality of the circumstances" approach adopted by the Supreme Court in *Illinois v. Gates,* an issuing magistrate is "simply to make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Illinois v. Gates,* —— U.S. ——,

103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)); *United States v. Doty,* 714 F.2d 761, 763 (8th Cir.1983) (quoting *Illinois v. Gates, supra,* 103 S.Ct. at 2332).

■ We conclude, without hesitation, that the affidavits submitted in this case provided a substantial basis for the magistrate's finding of probable cause. Having reviewed the evidence in connection with our determination regarding its sufficiency to support Michaels' conspiracy conviction, we find it unnecessary to reiterate it. We only note that although not all of the evidence previously described was presented to the magistrate prior to his issuance of the search warrants for the apartment and storage locker, a substantial portion of the crucial evidence was available to him. Additionally, search warrant affidavits provided information that an individual carrying a transmitter type device with an extended antenna was seen entering apartment 2706 prior to the day of the bombing. On the basis of the information he was provided, we hold that the magistrate reasonably concluded that there was a fair probability that components of a destructive device would be located in the apartment and storage locker.

Michaels further argues that a reversal is warranted because the scope of the apartment search far exceeded that authorized by the warrant. The warrant authorized agents to search the apartment for components of a destructive device. Agents dusted the apartment for fingerprints and positively identified a fingerprint on a table leg as being that of Michaels.

■ Michaels' contentions with respect to the scope of the search were not raised in his pretrial motion to suppress evidence. Although we are not obliged to address the issue, we note that Michaels can hardly claim prejudicial error from the introduction of the fingerprint evidence. Because Michaels testified that he visited William Albright at 2706 Arnold Tenbrook on numerous occasions, the introduction of fingerprint evidence that also places him there is entirely consistent with his explanation of an innocent reason for being in the apartment.

■ Lastly, Michaels argues that the government failed to lay a proper foundation for the introduction of the magazine upon which he left his fingerprint and upon which was drawn a map resembling the neighborhood surrounding the bomb scene. At trial, Michaels objected to the admission of the magazine on the ground that the government failed "to lay a proper foundation" for its exhibit. On appeal, he now complains of the trial court's ruling by urging specific grounds that were not mentioned when the objection was made. Michaels is precluded from asserting these grounds on appeal. Foundation objections require specificity. *United States v. Wagoner,* 713 F.2d 1371, 1377 (8th Cir.1983). "Reversal is not required with regard to alleged improper admission of exhibits without specific foundation, in the absence of a specific objection on foundation grounds." *United States v. Willis,* 482 F.2d 1034, 1040 (8th Cir.), *cert. denied,* 414 U.S. 1112, 94 S.Ct. 841, 38 L.Ed.2d 738 (1973). In any event, given the nature of the magazine offered into evidence, the circumstances surrounding its preservation and custody, and the unlikelihood of tampering, the district court did not err in determining that the evidence sufficiently established a chain of custody and admitted the challenged evidence. *See United States v. Brown,* 482 F.2d 1226 (8th Cir.1973).

## IV. Evidence of Prior Bombings

Michaels contends that evidence of the September 1980 car bombing death of his grandfather, James Michaels, Sr., was irrelevant or alternatively, if the evidence was at all probative, it was too prejudicial to be admitted. We disagree.

■ Although Michaels challenged its truth, testimony at trial indicated that subsequent to his grandfather's death, Michaels stated that "somebody was going to have to pay for this" and he further stated that if he found out who was responsible for his

grandfather's death, he would not tell the police. The government was obligated to prove that Michaels was a member of the conspiracy to bomb Paul Leisure's automobile. Thus, evidence providing a motive for the subsequent bombing was relevant to proving Michaels' participation in the conspiracy. *See United States v. Mennuti,* 679 F.2d 1032, 1037 (2d Cir.1982); *United States v. Hammond,* 642 F.2d 248, 249–50 (8th Cir.1981).

 Rule 403 of the Federal Rules of Evidence allows a trial court, in its discretion, to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. A district court's determination respecting the admissibility of evidence under Rule 403 is paid great deference, *United States v. Boykin,* 679 F.2d 1240, 1244 (8th Cir.1982), and its determination will not be reversed on appeal "absent a clear and prejudicial abuse of discretion." *Wade v. Haynes,* 663 F.2d 778, 783 (8th Cir.1981), *aff'd sub nom. Smith v. Wade,* — U.S. —, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). We cannot say that the district court abused its discretion in determining that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Prejudice to the defendant, if any, was minimal because there was no suggestion that Michaels was involved with the prior bombing and the details of the prior bombing were not delved into. While Rule 403 protects against evidence that is unfairly prejudicial in that it tends to suggest decision on an improper basis, the rule does not protect against evidence that is prejudicial merely in the sense that it is detrimental to a party's case. *Id.*

## V. Closing Argument Comment

As his final contention on appeal, Michaels argues that the district court committed error in refusing to declare a mistrial after the government's attorney, during closing argument, referred to the bombing victim as "a gangster." The government contends that the reference was a direct response to defense counsel's closing comments respecting the failure of the government to call Paul Leisure as a witness.

The district court was faced with determining whether the comment complained of, when viewed in the context of the entire trial, "was so offensive as to deprive the defendant of a fair trial." *United States v. Auerbach,* 682 F.2d 735, 739 (8th Cir.), *cert. denied,* 459 U.S. 911, 103 S.Ct. 219, 74 L.Ed.2d 174 (1982) (quoting *United States v. Bohr,* 581 F.2d 1294, 1301 (8th Cir.), *cert. denied,* 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978)). "[A] trial court has broad discretion in controlling closing arguments. Absent a showing of abuse of discretion this court will not reverse." *United States v. Bohr, supra,* 581 F.2d at 1301.

██ Although the reference to Paul Leisure as "a gangster" was inappropriate, unresponsive to defense counsel's argument, and unsupported by the evidence, we cannot conclude that the district court abused its discretion in refusing to declare a mistrial. Initially, we note that there is no "per se" rule that the mentioning of organized crime renders a trial unfair. *United States v. Varsalona,* 710 F.2d 418, 420 (8th Cir.1983). Counsel's gangster comment was not made in reference to defendant Michaels but rather referred to the victim of the bombing. The district court promptly sustained defense counsel's objection to the comment and further admonished the jury to disregard the comment in its totality. Approximately fourteen hours of deliberations indicates that the jury carefully assessed the evidence and fairly rendered a verdict. While we in no way approve of the comment made, we affirm "because of the prompt remedial action taken by the district court and relatively strong evidence." *United States v. Auerbach, supra,* 682 F.2d at 740.

Affirmed.