762 F.2d 1013
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, PLAINTIFF-APPELLEE,
v.
ATIYEH A. SALEM, DEFENDANT-APPELLANT.
 NO. 84-3305
 United States Court of Appeals, Sixth Circuit.
 4/3/85
 
 Appeal from the United States District Court for the Northern District of Ohio
 Before: KENNEDY and WELLFORD, Circuit Judges; and WEICK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is a direct criminal appeal from Salem's conviction under 18 U.S.C. Sec. 1001. Appellant was charged in an eight count indictment with four violations of 18 U.S.C. Sec. 911, falsely representing oneself to be a citizen of the United States, and four violations of Sec. 1001, knowingly and willfully falsifying a material fact or making a false or fraudulent statement in any matter within the jurisdiction of the United States, for having incorrectly identified himself as a U.S. citizen on four applications for government guaranteed student loans available only to U.S. citizens or nationals and resident aliens. Prior to submission of the case to the jury, the District Judge granted appellant's motion for acquittal on the Sec. 911 counts. The jury returned a verdict of guilty on the remaining counts, whereupon the court suspended imposition of sentence and placed defendant on probation for two years.
 
 
 2
 Appellant was born of Palestinian parents in Bethlehem in the Kingdom of Jordan in 1954. Since 1967, Bethlehem, located on the West Bank of the Jordan River, has been occupied by Israel. In 1973, he secured a Jordanian passport and traveled to Spain to undertake university studies. Palestinians could secure a passport from many Arab countries. While in Spain, he was informed by his parents that an opportunity to study in the United States that he previously had sought had been offered. He obtained a temporary student visa at the U.S. embassy in Madrid in 1974, at which time he came to the United States. He studied for one year at Snead State College, followed by one year at Livingston College, prior to enrolling in 1976 at the Ohio College of Podiatric Medicine (OCPM) in Cleveland, Ohio. The four student loan applications in question were made between 1979 and 1980 while he was a student at OCPM. Subsequent to his graduation from OCPM, he obtained an M.D. from Ross University of Medicine.
 
 
 3
 Appellant raises two separate contentions on appeal. First, he argues that the trial court erred in not granting his motion for acquittal on all counts because there was insufficient evidence to convict him beyond a reasonable doubt. Second, he argues that the trial court erred in refusing to grant his motion for a mistrial or give a curative instruction in response to certain remarks made over defense objection by the prosecutor in his closing argument.
 
 I.
 
 4
 The substance of appellant's defense at trial was that he lacked the intent requisite to a conviction under Sec. 1001. He alleges that he did not understand that he was not a U.S. citizen or national[1] when he filled out the student loan applications in question, at least as those terms were meant in the forms. Moreover, he contends that he did not know that he had to falsify this information in order to be eligible for the loans. The latter contention is readily disposed of. It is not necessary that the appellant have understood that U.S. citizenship or national status was an eligibility requirement and hence 'material' to approval of the student loans for which he applied. '[T]he language of Section 1001 does not require such specific proof that the person committing the fraud did so with knowledge that the fraudulent statement would affect federal funds . . ..' United States v. Lewis, 587 F.2d 854, 857 (6th Cir. 1978); see also United States v. Yermian, ---- U.S. ----, 104 S. Ct. ----, 82 L. Ed. 2d 53 (1984) (Sec. 1001 does not require proof of actual knowledge of federal agency jurisdiction).
 
 
 5
 Review of a denial of a Fed. R. Crim. P. 29 motion for acquittal involves application of the same standard invoked by the trial courts--"consider[ing] the evidence as a whole, taken in the light most favorable to the Government, together with all legitimate inferences to be drawn therefrom, . . . whether a rational trier of fact could have found guilt beyond a reasonable doubt." United States v. Adamo, 742 F.2d 927, 932 (6th Cir. 1984) (quoting United States v. Patterson, 644 F.2d 890, 893 (1st Cir. 1981)). '[O]ur court on appeal will reverse a judgment for insufficiency of evidence only if this judgment is not supported by substantial and competent evidence upon the record as a whole, and . . . this rule applies whether the evidence is direct or wholly circumstantial. It is not necessary that circumstantial evidence remove every reasonable hypothesis except that of guilt.' United States v. Stone, 748 F.2d 361, 363 (6th Cir. 1984).
 
 
 6
 Applying the above standard, it is clear that there was sufficient evidence presented to the jury to support the verdict below. An Immigration and Naturalization Service (INS) investigator testified that in an interview held just one week after appellant submitted the last of the loan applications in question, appellant identified himself to the investigator as a Jordanian citizen. A letter was introduced, written by appellant to Senator James Allen of Alabama in December 1976, which requested the Senator's assistance in obtaining U.S. citizenship. It was undisputed that appellant's temporary visa required that he periodically apply to INS for extensions, which he did. There was evidence indicating that appellant had given false information on other applications (e.g., stating on application for Ohio medical license that he had never been convicted of a crime when he had a bad check conviction; holding various forms of identification including an Ohio Driver's License under aliases), which appellant apparently concedes were properly admitted 'as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.' Fed. R. Evid. 404(b). While appellant offers plausible explanations with respect to these and other proofs that support his position, the evidence was certainly such that the jury could resolve the issue against him.
 
 
 7
 The jury also could have inferred that appellant had the requisite knowledge and intent solely on the basis of his educational attainments and three years of residence in the United States as a student prior to making the false loan applications. Moreover, it was undisputed that there was a warning on the loan application forms stating that any person knowingly making a false statement or misrepresentation on the form would be subject to prosecution under the U.S. Criminal Code. Even if the appellant was confused about his citizenship or whether he was a U.S. national, he cannot insulate himself from a violation of Sec. 1001 if he acted with reckless disregard of whether his statement was true or with a conscious purpose to avoid learning the truth. United States v. Egenberg, 441 F.2d 441, 444 (2d Cir.), cert. denied, 404 U.S. 994 (1971).
 
 II.
 
 8
 Appellant's second argument is based on two allegedly improper statements made over defendant's objection by the prosecutor in his closing rebuttal argument. First, appellant contends that the prosecutor inflamed and prejudiced the jury by characterizing white collar crime as tearing the fabric of society and undermining the faith of the people, and contrasting the many immigrants who came to Ohio and became responsible American citizens from Mr. Salem, who came to 'milk the system.'[2] Second, appellant argues that the prosecutor misstated the law by suggesting that evidence of appellant's prior bad acts constituted evidence of guilt.[3] The District Judge declined to give a specific curative instruction, relying upon a general admonition in the charge that the statements of counsel are not evidence.
 
 
 9
 Broad discretion is reposed in the trial court to control closing arguments and its discretion in this area will not be overturned absent a showing of clear abuse. United States v. Michaels, 726 F.2d 1307, 1315 (8th Cir. 1984); United States v. Grabiec, 563 F.2d 313, 319 (7th Cir. 1977). A prosecutor is permitted a certain degree of latitude in summation. United States v. Calandrella, 605 F.2d 236, 254 (6th Cir.), cert. denied, 444 U.S. 991 (1979); United States v. Barker, 553 F.2d 1013, 1025 (6th Cir. 1977). The fact of impropriety alone is insufficient grounds for reversal. "The prosecutorial argument must be so egregious so as to render the entire trial fundamentally unfair.' Cook v. Bordenkircher, 602 F.2d 117 (6th Cir. 1979). That point at which improper argument amounts to a constitutional deprivation can only be defined by reference to the totality of the circumstances of the particular case.' Summitt v. Bordenkircher, 608 F.2d 247, 253 (6th Cir. 1979), aff'd sub nom. Watkins v. Sowders, 449 U.S. 341 (1981). 'Appeals to the jury to act as the conscience of the community, unless designed to inflame the jury, are not per se impermissible.' United States v. Kopituk, 690 F.2d 1289, 1342-43 (11th Cir. 1982) (citing United States v. Alloway, 397 F.2d 105, 113 (6th Cir. 1968)), cert. denied, 103 S. Ct. 3542 (1983).
 
 
 10
 Applying these principles to the instant case, the prosecutor's statements with respect to the seriousness of fraud do not appear to have been intended to inflame the jury, nor would it appear that appellant's substantial rights were affected. Rather, those remarks were reasonably calculated to respond to arguments raised during trial and the closing argument of defense counsel seeking to minimize the seriousness of appellant's alleged misrepresentations. See Angel v. Overberg, 682 F.2d 605 (6th Cir. 1982); Cook v. Bordenkircher, 602 F.2d 117, 120-21 (6th Cir.), cert. denied, 444 U.S. 936 (1979); United States v. Smith, 561 F.2d 8, 13 (6th Cir. 1977), cert. denied, 434 U.S. 958 & 972 (1977), 434 U.S. 1019 & 1048 (1978); see also United States v. Mackey, 571 F.2d 376, 385-86 (7th Cir. 1978). As to the prosecutor's remarks concerning immigrants, logically they would tend to counteract any prejudice on the part of the jurors against appellant due to his alienage. While we do not approve of contrasting appellant to other immigrants, the argument does not warrant reversal of the conviction.
 
 
 11
 Appellant is correct that a misstatement of law by the prosecutor in a closing argument can be a ground for reversal. Mackey, 571 F.2d at 384-85. However, in the instant case, as in Mackey, the prosecutor's remark did not constitute a statement of law, but rather was in response to the insistent arguments of defense counsel that all instances of false statements introduced at trial could be explained away as mistaken, inadvertent or insignificant. As such, it does not appear that the prosecutor was seeking by his allegedly improper remark to persuade the jury to draw any impermissible inferences from the evidence other than those for which it was properly admitted under rule 404(b).
 
 
 12
 The judgment of the District Court is affirmed.
 
 
 13
 WELLFORD, Circuit Judge., concurring in part, dissenting in part.
 
 
 14
 I concur in Part II of the majority's opinion that the remarks of the prosecutor did not constitute reversible error. See United States v. Young, 105 S.Ct. 1038 (1985). I cannot agree with the majority's conclusion, however, that sufficient evidence exists to sustain Salem's conviction under 18 U.S.C. Sec. 1001.
 
 
 15
 The basis of the prosecution in this case was the filling out by Salem of certain forms calling for a 'yes' or 'no' response to a question that in effect asked, 'are you a United States citizen or national?' When Salem responded 'yes' he was subsequently indicted for 'knowingly and willfully' making false and fraudulent statements of a material fact in violation of 18 U.S.C. Sec. 1001.[4] Salem admitted that he signed the forms in controversy, containing the warning that he must answer truthfully. The four counts of the indictment presented to the jury all set out the charge that on specified dates Salem 'represented that he was a citizen of the United States, whereas in truth and fact, as defendant well knew, he was not a citizen of the United States; . . ..'
 
 
 16
 The majority cites another section of the code in defining a 'national' other than the definition set out in the definitional section dealing with Immigration & Nationality which is the basis of the indictment. The district court in this case and the prosecution, however, entirely ignored any definition of 'national' in the course of the case or in the instruction to the jury. That 'the thrust of defendant's testimony was that he thought himself a U. S. citizen,' as set out in footnote 1, was understandable since Salem was charged only with misrepresenting his citizenship without any reference to the alternative 'national' status. It is for the prosecution to prove guilt, not for the defendant to prove innocence under our criminal justice system. There was simply no proof as to whether Salem was, or was not, a 'national,' or whether he falsely considered himself or represented himself a 'national.' In my view, this was a fatal deficiency, whether or not Salem's attorney objected to the court's instructions.
 
 
 17
 My problem with the indictment is that it ignores the alternative phrasing of the question asked of Salem. Salem, or any other person responding, may well have thought he was a 'national' even if he knew he was not a United States citizen. Salem had been living in this country for a number of years as a student, had taken an American wife, and was given a social security number. He claimed to be confused by the wording of the question, and was concededly given no clarification or definitional help from the forms themselves, the written instructions, nor from those administering the program.
 
 
 18
 The government claims some support from the notation on the forms under the 'no' response following the question in controversy:
 
 
 19
 If you checked the no box, you must indicate your passport or alien registration from the Form I-94. Also holders of Form I-94 must place in the space marked I-94 authority. In item 4 [sic], the words paroled, refugee, or humanitarian from the lower right-hand corner of the I-94.
 
 
 20
 I can find no clarification or assistance for a person doubtful of his status as a possible 'national' in the form or in the additional language cited. Title 8 contains the following definition of 'national:'
 
 
 21
 (A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States.
 
 8 U.S.C. Sec. 1101(22).[5]
 
 22
 The government had the burden of proving, in order to establish the criminal violation charged, that Salem had knowingly and willfully set out falsely that he was a citizen and that he knowingly and willfully set out falsely that he was a 'national.' Contrary to the majority's position, sufficient proof of criminal intent is lacking to sustain a conviction here. The jury was instructed that to convict it had to find beyond a reasonable doubt that Salem had knowingly and willfully misrepresented himself to be a U. S. citizen without reference to the alternative status of 'national.'
 
 
 23
 The record is totally devoid of any proof that Salem actually knew the meaning of the term 'national.' In fact, the record reflects the fact that not one witness who testified at the trial knew the meaning of that term. No instruction was ever given to the jury in this regard. Because of the vagueness of the meaning of the term 'national,' and because of lack of evidence establishing the meaning of the term, the jury was left to speculate as to Salem's knowledge and intent. I would accordingly reverse the conviction as not being supported by the evidence.
 
 
 
 [1]
 Title 8 U.S.C. Sec. 1101(22) defines national as '(A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States.' Thus, all citizens are nationals, but not all nationals are citizens. 8 U.S.C. Sec. 1408 defines those persons who are nationals but not citizens of the United States as follows, in pertinent part:
 (1) A person born in an outlying possession of the United States on or after the date of formal acquisition of such possession;
 (2) A person born outside the United States and its outlying possessions of parents both of whom are nationals, but not citizens of the United States, and have had a residence in the United States, or one of its outlying possessions prior to the birth of such person; and
 (3) A person of unknown parentage found in a outlying possession of the United States while under the age of five years, until shown, prior to his attaining the age of twenty-one years, not to have been born in such outlying possession.
 National status 'depends primarily upon place of birth, the common law principle of jus soli,' and 'allegiance' is owed only by U.S. nationals, Cabebe v. Acheson, 183 F.2d 795, 797 (9th Cir. 1950); allegiance is not a state of mind prerequisite or sufficient to hold national status.
 Defendant clearly was not a national of the United States. Although the jury instructions might well have dealt with the definition of national, they were not objected to. As given they would require the acquittal of defendant if he really believed he were a U.S. national. The thrust of defendant's testimony was that he thought himself a U.S. citizen. The jury instructions required that the government prove that the defendant knowingly made a false statement or representation. They were not limited to a false representation of citizenship.
 
 
 [2]
 The statement made by the prosecutor to which the appellant objects appears in the record as follows:
 There is an attitude in this country that the only kind of crime that is really serious or does violence to our society is the kind done by a criminal with a gun, and the problem with that kind of argument is that it overlooks the kind of crime that can be done by people like Mr. Salem--people with a briefcase, people with a tie.
 These crimes are also serious. They tear at the fabric of our society. They undermine our society because they make people lose faith.
 * * *
 It damages our society and does harm to our society, and I think when you think about it you will agree that is true. A society that is assaulted with fraud does not function properly.
 Many, many citizens of this community, particularly Cleveland, Northern Ohio, are immigrants, and the immigrants that came here came to contribute to this country. They came to raise families, earn a living. They built steel mills, the universities. They didn't come here to take. The citizens who built this community came here and accepted responsibility as American citizens. They accepted their duties as American citizens. They didn't come here just to take.
 Mr. Salem came here to take. He saw a way of milking the system and that's exactly what he did. What he saw when he came here was that Americans have really good hearts, Americans are ready to accept whatever people say at face value, and that is what Mr. Salem has been doing. That's how he got away with this fraud--milk the system.
 
 
 [3]
 The statement in question appears as follows:
 [Y]ou will recall those exhibits had to do with his false statements to the Illinois Medical Board, to the California Medical Board. They included his fake I.D.'s and also included false statements he made to Mr. Evangelista from Lake County. You take a look at those and look at those real closely, and you draw the inferences you want to draw from those exhibits, and I think you will see that those inferences point directly to guilt, period. No question about it.
 * * *
 Again, you draw the inferences you want.
 
 
 [4]
 That statute provides in pertinent part:
 Whoever, . . . knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, . . . shall be fined not more than $10,000 or imprisoned not more than five years, or both.
 
 
 [5]
 It is significant that the Assistant U. S. Attorney at oral argument, like the two government witnesses at trial, could not give a definition of the term, 'national.' Mr. Kruczyk, the immigration officer, testified that a national was 'a resident, a person born in Puerto Rico, as an example, or the U. S. Virgin Islands which are a possession of the United States.' (Emphasis added)
 Mr. Thomas, of the Ohio Student Loan Commission, testified that he did not know the difference between a 'citizen' and 'national,' but the latter 'would still have citizenship.'