SMITH, Circuit Judge,
concurring in part and dissenting in part.
I respectfully dissent from the majority’s affirmance of Mann’s conviction on Count II because the government failed to adduce sufficient evidence that Dr. Pierce’s vehicle was used in interstate commerce or affected interstate commerce. I otherwise concur in the majority opinion.
The government failed to introduce sufficient evidence to convict Mann of maliciously damaging a vehicle used in interstate commerce, in violation of 18 U.S.C. § 844(i). To convict Mann of maliciously damaging Dr. Pierce’s vehicle, the government needed to prove that Mann (1) damaged or destroyed a vehicle by means of an explosive, (2) he did so maliciously, and (3) the vehicle was used in interstate commerce or an activity affecting interstate commerce. See 18 U.S.C. § 844(i). Mann argues that the government introduced insufficient evidence to show that Dr. Pierce used his vehicle in interstate commerce or in an activity affecting interstate corn *312 merce. In response, the government argues that Dr. Pierce’s driving his vehicle from his home in West Memphis, Arkansas, to his work place in Little Rock, Arkansas, affected interstate commerce.
To “be ‘used’ in an activity affecting commerce,” the vehicle must be “activel[y] employ[ed] for commercial purposes, and not [have] merely a passive, passing, or past connection to commerce.” Jones, 529 U.S. at 855, 120 S.Ct. 1904. In Jones, the Supreme Court answered whether “property occupied and used by its owner not for any commercial venture, but as a private residence.... [i]s ..., in the words of § 844(i), used in ... any activity affecting ... commerce.” 529 U.S. at 854, 120 S.Ct. 1904 (quotation omitted) (fourth and fifth alteration in original). In answering this question, the Court noted that “[t]he key word is ‘used.’ Congress did not define the crime described in § 844(i) as the explosion of a building whose damage or destruction might affect interstate commerce .... ” Id. (quotation and citation omitted). Instead, “Congress required that the damaged or destroyed property must itself have been used in commerce or in an activity affecting commerce.” Id. (quotation, alteration, and citation omitted). Similarly, in this case, “[t]he proper inquiry ... is into the function of the [vehicle] itself, and then a determination of whether that function affects interstate commerce.” Id. (quotation, citation, and footnote omitted). While
§ 844(i) excludes no particular type of [vehicle] (it covers “any [vehicle]”) [,] the provision ... require[s] that the [vehicle] be ‘used’ in an activity affecting commerce. That qualification is most sensibly read to mean active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce. Although variously defined, the word “use,” in legislation as in conversation, ordinarily signifies active employment.
Id. at 855, 120 S.Ct. 1904 (quotations and citations omitted).
In a factually analogous case, the Tenth Circuit found a similar argument to that of the government’s insufficient to satisfy the interstate commerce requirement of § 844(i). In United States v. Monholland, defendants conspired to place an explosive device on an Oklahoma state court judge’s vehicle. 607 F.2d at 1312. The government alleged that the defendants violated § 844(i). Regarding the interstate commerce prong of § 844(i), the government theorized “that the vehicle was used in interstate commerce or in an activity affecting interstate commerce.... [because] the judge’s pickup [w]as a vehicle which [wa]s regularly used in and as a part of activity affecting interstate commerce.” Id. at 1314. The Tenth Circuit rejected the government’s argument and found that the vehicle was not “used” in interstate commerce, stating:
The vehicle in question was not even used on official business. It was used to transfer the judge to and from work. The important problem here is that movement to and from work is an activity which ordinarily has an existence independent from the work. It does not blend into and become a part of the career. If a connection is to be established between the vehicle and the work, it must be shown that there exists a nexus between the two activities. Here the activities are independent.
The evidence here is that the function of the truck is to get the judge back and forth, and if the truck fails he would find some other means to accomplish the trip. We say, then, that the truck is wholly immaterial as far as any commerce is concerned even if we assume that there is a commerce quality about *313 what the judge does after he gets to court.... Since [the vehicle] is divorced from the activity carried on in court, there is no legal relationship whereby one can say that the truck affects commerce .... Our view has to be that, in law, the activity of the judge at the courthouse is remote from the use of the truck. The truck does not enter into the administration of justice in the slightest degree.
Id. at 1316.
Similarly, here, the Board’s ability to affect interstate commerce does not convert Dr. Pierce’s personal vehicle into an item “used” in interstate commerce.[19] Section 844(i) requires this court to look at “the function of the [vehicle] itself,” not Dr. Pierce’s role as a member of the Board. Jones, 529 U.S. at 854, 120 S.Ct. 1904. The government’s argument focuses on the Board’s effect on interstate commerce; yet, it ignores that the object of the crime for purposes of § 844(i) is the vehicle. Thus, the vehicle itself, not the Board’s activities, has to affect interstate commerce. In my view, “[w]ere we to adopt the Government’s expansive interpretation of § 844(i), hardly a [vehicle] in the land would fall outside the federal statute’s domain.” Id. at 857, 120 S.Ct. 1904. Under the government’s view, a person who regularly drives his or her own private vehicle intrastate to any company or nonprofit organization would satisfy the “used” requirement of § 844(i).[20] Thus, “[I] conclude that § 844(i) is not soundly read to make virtually every arson in the country a federal offense” and would therefore “hold that the provision covers only property currently used in commerce or in ah activity affecting commerce.” Id. at 859, 120 S.Ct. 1904.
The majority also notes that “[t]he vehicle’s function was not only to transport Pierce to Board meetings and other trips made on behalf of the Board, but it was also used to transport Board files to the meetings, instead of shipping them.” It contends that Dr. Pierce’s use of his personal vehicle to attend Board meetings is analogous to the victim’s use of his vehicle as a traveling union organizer in Michaels, 726 F.2d 1307. But that case is distinguishable. In finding that the government satisfied the jurisdictional requirement in Michaels, we said:
The government’s uncontradicted evidence sufficiently demonstrates that the Cadillac automobile was used by [the victim] to conduct union business. [A witness], testified that [the victim] was employed by the union as a field organizer. In this capacity, [the victim] traveled to various job sites for the purpose of enrolling new members in the union and collecting money owed the union by current members. The union paid [the victim] a $200 per month allowance as reimbursement for using his personal automobile to conduct union business. Clearly, use of the automobile was an integral and necessary part of [the victim’s] job assignment and was not merely a means of traveling to and from work.
*314 Id. at 1310 (citation omitted) (emphasis added). In Michaels, it was a part of the victim’s duties to “travel[ ] to various job sites for the purpose of enrolling new members in the union and collecting money owed the union by current members.” Id. In contrast, here, Dr. Pierce’s vehicle was not an “integral and necessary part of [his] job assignment.” Id. Rather it was “merely a means of traveling to and from [Board meetings].” Id. The Board’s reimbursement of Dr. Pierce for his intrastate travel and his transport of files does not convert Dr. Pierce’s personal vehicle into one that he “used in commerce or in an activity affecting commerce.” Jones, 529 U.S. at 854, 120 S.Ct. 1904 (quotation and citation omitted). Dr. Pierce’s attendance at Board meetings — not his means of transportation — was an integral part of his work.[21]
For the forgoing reasons, I respectfully dissent in part.

. The majority correctly notes the distinction between 18 U.S.C. § 2332a and 18 U.S.C. § 844(i): “Proving a violation of Count 2 requires proof of an element required in Count 1: specifically, in Count 2, the vehicle itself must be used in interstate commerce, rather than the lesser requirement that the offense affect interstate commerce found in Count 1.”

. This is especially true here, where the not-for-profit Board focuses on licensing of physicians only in Arkansas. Under the government’s reasoning, any private vehicle used to transport a worker to a commercial enterprise would necessarily be included within § 844(i)’s reach.

. In Jones, the Court rejected a similar argument by the government when it argued that a private residence fell within § 844(i)’s jurisdiction because it received natural gas from outside of the state. 529 U.S. at 855-56, 120 S.Ct. 1904.