UNITED STATES of America, Appellee,

v.

**Milton Russell SCHEPP, Appellant.**

No. 83–2244.

United States Court of Appeals, Eighth Circuit.

Submitted May 16, 1984.

Decided Oct. 11, 1984.

Rehearing and Rehearing En Banc Denied Nov. 8, 1984.

J. Martin Hadican, St. Louis, Mo., for appellant.

Frederick R. Buckles, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before ROSS, BENNETT[*] and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Milton Russell Schepp appeals from a final judgment entered in the District Court[1] for the Eastern District of Missouri upon a jury verdict finding him guilty of conspiracy to damage by means of an explosive a vehicle used in an activity affecting interstate commerce in violation of 18 U.S.C. §§ 2 and 844(i) (1976), making an unregistered explosive device in violation of 26 U.S.C. § 5822 (1976), and damaging by means of an explosive a vehicle used in an activity affecting interstate commerce in violation of 18 U.S.C. § 844(i) (1976). Appellant was sentenced to terms of five, ten and ten years of imprisonment, respectively, to run concurrently. For reversal appellant argues that the district court erred in (1) admitting evidence of flight, (2) permitting the government to ask leading questions of one of its witnesses, (3) failing to restrict the government's cross-examination of appellant, (4) admitting out-of-court statements of a coconspirator, and (5) failing to declare a mistrial *sua sponte* because of improper closing remarks by the government.[2] For the reasons discussed below, we affirm the judgment of the district court.

At trial the government established the following facts. On September 17, 1980, Jimmy Michaels, Sr., was killed when a bomb exploded in his car. His grandson, Jimmy Michaels, III, indicated to a friend, William Albright, and to a police officer that he intended to avenge his grandfather's death.

In March 1981, appellant, then chief of police of the City of St. George, Missouri, asked Norman Steibel, owner of an auto repair shop, to purchase two inexpensive automobiles for him using fictitious names. Steibel purchased a Ford and a Chevrolet for which appellant paid him in cash. In April 1981, Albright rented an apartment for Michaels for six months in a sixteen-unit apartment complex in Arnold, Missouri, and in June 1981, Albright rented a storage garage in Fenton, Missouri, for Michaels. Michaels told Albright that Albright could not keep a key to the apartment because there would be people in and out of the apartment all the time.

During the spring and summer of 1981, the Ford and Chevrolet purchased for appellant, as well as a car with the personalized license plate "SCHEPP," were seen outside the rented apartment.

On the morning of August 11, 1981, Paul Leisure was seriously injured when a bomb exploded in his car in front of his house. A brief case, containing papers and documents from Local 42 of the Laborer's International Union for which Leisure worked as a field organizer, was found on the

---

[*] The Honorable Marion T. Bennett, Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

[1.] The Honorable John F. Nangle, Chief Judge, United States District Court for the Eastern District of Missouri.

[2.] Appellant raised two additional points on appeal: (1) that the government failed to establish that the damaged vehicle was used in an activity affecting interstate commerce and (2) that the district court erred in admitting evidence seized from a trash dumpster, an apartment and a storage garage. We hold that *United States v. Michaels*, 726 F.2d 1307 (8th Cir.1984), is controlling on these points and rule them against appellant.

ground near the car. An investigation revealed that a remotely activated, high explosive bomb was used. The Chevrolet purchased for appellant was seen parked one block away from Leisure's house at the time of the explosion with two men inside, later identified as Jack Issa and George Faheen. The men kept their attention focused on the corner Fotomat booth, from where Leisure's house was visible. A remote control device had recently been purchased by a man driving a red Volkswagen, which was the type of car driven by Faheen.

An FBI investigation led to Albright, Steibel, the rented apartment, and the storage garage. On August 15, 1981, FBI agents searched, without a warrant, the trash dumpster shared by all tenants of the apartment complex and found in a plastic garbage bag materials used in the manufacture of a bomb. In another plastic bag they found mail addressed to the apartment rented for Michaels and magazines bearing the fingerprints of appellant and Michaels. A warranted search of the apartment revealed that it had been wiped clean of fingerprints. However, one fingerprint belonging to Michaels was recovered. Agents searched the storage garage and found the Ford purchased by Steibel for appellant.

Albright informed Michaels that the FBI had questioned him concerning the apartment. Michaels told Albright not to worry because the apartment had been wiped clean and that he should not say anything if called before a grand jury. Steibel informed appellant that the FBI was questioning him about the two cars. Appellant told Steibel not to mention his name and that the Ford was in a garage. On August 17, 1981, one day after speaking to Steibel, appellant left St. Louis and went to California where he remained until March 1983 when he voluntarily surrendered to face the charges against him for the Leisure car bombing.

Appellant testified that he had gone to the rented apartment several times during the summer of 1981 with one of his ex-

brothers-in-law, Robert Peters, to drink beer and watch baseball games. His ex-wife's family, the Peters, was close to the Michaels family. Appellant testified that he left St. Louis because he received a phone call telling him that the Leisures planned to take reprisals against everyone who had been in the rented apartment.

During cross-examination, the government was permitted, over objection, to ask whether appellant's ex-brother-in-law, Norman Peters, left town in 1964 as a result of the murder of Richard Leisure and whether Peters had worked as a bodyguard for Jimmy Michaels, Sr. In closing argument the government theorized that at the time of the bombing someone was positioned in the Fotomat booth to signal to the men in the Chevrolet when to activate the remote control device. The government suggested that appellant's motive for involvement in the crimes charged may have been money. The government made mention of organized crime in St. Louis, referred to appellant as a criminal and argued that in leaving St. Louis appellant did not behave as a police officer but as a hoodlum.

*Admission of Flight Evidence*

Appellant argues that the district court erred in admitting evidence that he fled St. Louis following the bomb incident upon learning that the FBI questioned Steibel about the two cars purchased for appellant. Appellant argues that this evidence was irrelevant or too prejudicial to be admitted. We disagree.

 It is well settled that flight of the accused subsequent to the commission of a crime is, in certain instances, a circumstance proper to be laid before the jury as having a tendency to prove guilt. *United States v. Peltier*, 585 F.2d 314, 322–24 (8th Cir.1978), *cert. denied*, 440 U.S. 945, 99 S.Ct. 1422, 59 L.Ed.2d 634 (1979). In *Peltier* we held that in assessing the probative value of flight evidence, the facts of each case must be scrutinized to determine the strength and validity of drawing the following four inferences: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from con-

sciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged. *Id.; see also United States v. Rossbach,* 701 F.2d 713, 719 (8th Cir.1983); *United States v. Blue Thunder,* 604 F.2d 550, 556 (8th Cir.), *cert. denied,* 440 U.S. 902, 100 S.Ct. 215, 62 L.Ed.2d 139 (1979).

■ We hold that there are sufficient "evidentiary manifestations," *see United States v. Peltier,* 585 F.2d at 323, in the present case to support all four of the necessary inferences. Appellant fled soon after the commission of the crime and, according to the government's evidence, immediately upon learning that the FBI's investigation uncovered the link between the two cars purchased for him and the crimes. *Compare United States v. White,* 488 F.2d 660, 662 (8th Cir.1973) (instructing the jury that it may consider flight evidence in its determination of guilt held not appropriate where the defendant, unaware that he was being sought for the crime charged, fled from police attempting to arrest him five months after commission of crime). Appellant's own explanation for his flight, *i.e.,* fear of reprisal by the Leisure family, suggests that his decision to flee may have been prompted by consciousness of guilt, and hence actual guilt, of the crimes charged.

The degree to which the probative value of the flight evidence may have been outweighed by the danger of unfair prejudice, under Fed.R.Evid. 403, was a matter within the discretion of the district court. The district court did caution the jury against giving undue emphasis to the flight evidence. We find no abuse of discretion in the admission of evidence of appellant's flight.

*Leading Questions*

■ Appellant next argues that the district court erred in permitting the government to use leading questions during its direct examination of its key witness, Steibel. The record does not reveal a pattern of leading questions. Rather, three questions during a long examination

were objected to. Rule 611(c), Fed.R.Evid., permits the district court to allow leading questions when necessary to develop testimony. The use of leading questions is a matter left to the discretion of the district court. *McClard v. United States,* 386 F.2d 495, 501 (8th Cir.1967), *cert. denied sub nom. Ussery v. United States,* 393 U.S. 866, 89 S.Ct. 149, 21 L.Ed.2d 134 (1968). We find no abuse of discretion here.

*Cross-Examination of Appellant*

Appellant also claims reversible error in the district court's allowing the government to inquire of appellant on cross-examination whether his ex-brother-in-law, Norman Peters, had worked for Jimmy Michaels, Sr., and whether Peters left St. Louis in 1964 as result of the murder of Richard Leisure. Appellant argues that this was an improper attempt by the government to prejudice appellant in the eyes of the jury by showing that his acquaintances were men of bad character and involved in criminal activity similar to that for which appellant was charged.

■ On direct examination appellant testified about the nature of his relationship with Norman Peters and that he had last seen Norman Peters in 1964. Under Fed.R.Evid. 611(b), cross-examination is limited to the subject matter of direct examination and credibility, with discretion in the district court to permit inquiry into additional matters where that would aid in the development of the evidence. The permissible extent of cross-examination is a matter within the broad discretion of the district court. *United States v. Drake,* 542 F.2d 1020, 1022 (8th Cir.1976), *cert. denied,* 429 U.S. 1050, 97 S.Ct. 762, 50 L.Ed.2d 766 (1977). We find no abuse of discretion in this instance.

*Coconspirator's Statements*

Appellant argues that the district court improperly admitted several out-of-court statements of Michaels because these statements were not made in furtherance of and during the course of the conspiracy

as required by Fed.R.Evid. 801(d)(2)(E). The specific statements challenged are the statements to Albright and a police officer indicating Michaels' intention to retaliate against those responsible for his grandfather's death, the statement to Albright that people would be going in and out of the rented apartment, and the statement to Albright that the apartment had been wiped clean of fingerprints and not to say anything to a grand jury.

■ Fed.R.Evid. 801(d)(2)(E) provides that a statement is not hearsay if it is offered against a party and constitutes "a statement by a coconspirator of [the] party during the course and in furtherance of the conspiracy." For an out-of-court statement to be admissible against a defendant under this provision, the government must demonstrate by a preponderance of independent evidence (1) that a conspiracy existed, (2) that the defendant and the declarant were members of the conspiracy, and (3) that the statement was made during the course and in furtherance of the conspiracy. *United States v. Bentley*, 706 F.2d 1498, 1506 (8th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2397, 81 L.Ed.2d 354 (1984); *United States v. Bell*, 573 F.2d 1040, 1043–44 (8th Cir.1978).

■ The third requirement for admissibility, in issue here, is afforded a broad construction, *United States v. Bentley*, 706 F.2d at 1506, and we conclude that it was satisfied in the present case with respect to the statement that people would be going in and out of the rented apartment. The question whether the other challenged statements were made "during the course" of the conspiracy is more difficult. *See* 4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 801(d)(2)(E)[01] (1978 & Supp.1984), for a discussion of admission of "pre-conspiracy" and "post-conspiracy" statements. Even assuming, however, that these statements were not made during the course and in furtherance of the conspiracy, we conclude that any error in their admission was harmless. *See United States v. Bentley*, 706 F.2d at 1506. The statements did not mention or in any way implicate appel-

lant and there was overwhelming independent evidence of the existence of a conspiracy and Michaels' and appellant's participation therein. In the circumstances of this case, there is not a reasonable possibility that this evidence contributed to appellant's conviction and any error in its admission does not require reversal. *See id.; United States v. Moss*, 544 F.2d 954, 960 (8th Cir. 1976), *cert. denied,* 429 U.S. 1077, 97 S.Ct. 822, 50 L.Ed.2d 797 (1977).

### Closing Argument

Appellant's final argument on appeal is that the district court erred in not declaring a mistrial because of improper and prejudicial closing remarks by the government. Appellant cites as grounds for reversal the government's hypothesis about a conspirator at the Fotomat booth, suggestion regarding appellant's motive for participation, mention of organized crime, reference to appellant as a criminal and characterization of appellant's behavior as that of a hoodlum.

■ The district court has broad discretion in controlling closing argument, and absent a showing of abuse of that discretion, this court will not reverse. *United States v. Michaels*, 726 F.2d 1307, 1315 (8th Cir.1984); *United States v. Auerbach*, 682 F.2d 735, 739 (8th Cir.), *cert. denied,* 459 U.S. 911, 103 S.Ct. 219, 74 L.Ed.2d 174 (1982); *United States v. Bohr*, 581 F.2d 1294, 1301 (8th Cir.), *cert. denied,* 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978). We believe that the first comment pointed to by appellant was fairly supported by the evidence or reasonable inferences flowing therefrom and that the second comment was invited by appellant's closing argument asking the jury to focus on the question of what reason appellant would have had to get involved in the crimes charged.

■ We are more troubled by the government's mention of organized crime and especially by the government's reference to appellant as a criminal and characterization of appellant's behavior as that of a hoodlum. Statements such as these have

no place in a criminal trial. They are offensive and in no way condoned by this court. Had a request been made, it would have been proper for the district court to strike these remarks and promptly instruct the jury to disregard them. The question on appeal, however, is whether, when viewed in the context of the entire trial, these remarks were "so offensive as to deprive the defendant of a fair trial." *United States v. Bohr,* 581 F.2d at 1301. With this in mind we hold that the remarks of the government do not require reversal. *See United States v. Michaels,* 726 F.2d at 1316; *United States v. Splain,* 545 F.2d 1131, 1135 (8th Cir.1976).

Accordingly, we affirm the judgment of the district court.