UNITED STATES of America, Appellee,

v.

Herbert McDANIEL, Appellant.

No. 85–1491.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1985.
Decided Sept. 23, 1985.

Byron Neal Fox, Kansas City, Mo., for appellant.

Thomas M. Larson, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Before BOWMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

HENLEY, Senior Circuit Judge.

Herbert McDaniel appeals from his conviction by jury in the United States District Court for the Western District of Missouri for distributing cocaine and heroin in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.[1] McDaniel contends as follows: (1) that the court erred in admitting into evidence under the coconspirator hearsay exception, Fed.R.Evid. 801(d)(2)(E), certain statements by Howard McDaniel and James Phillips; (2) that the admission of the statements into evidence violated his rights under the confrontation clause; and (3) that the court erred in admitting evidence of other crimes and bad acts. We affirm.

Herbert McDaniel was named in two indictments returned by a Kansas City grand jury on November 29, 1984. In the first indictment, he was charged with conspiring with Teresa Powell to distribute a controlled substance, and with distribution of a controlled substance. In the second indictment, he and his brother Howard McDaniel were charged with distributing heroin and cocaine on October 12, 1984.

The indictments were the result of an undercover investigation by Kansas City Police Detectives Marcus Harris and William Ervin, and D.E.A. Special Agent Jerry Heard. Detective Harris purchased drugs from Howard McDaniel and James Phillips

---

1. The Honorable Scott O. Wright, Chief Judge, sentenced Herbert McDaniel to fifteen years imprisonment, a $75,000.00 fine, and a special five-year parole term.

on September 7, 1984, and from Howard McDaniel on October 5, 1984. Both of these transactions took place immediately after Howard McDaniel visited an apartment building at 3244 Harrison, the location of Herbert McDaniel's apartment. On both of these occasions, Detective Harris noticed that Herbert McDaniel's black Corvette was in the parking lot of the building.

On October 12, 1984 Detective Harris purchased heroin and cocaine from Herbert and Howard McDaniel in Herbert McDaniel's apartment at 3244 Harrison. Detective Harris discussed drug purchases with Herbert McDaniel at his apartment on October 25, October 29, October 31 and November 1, but no transactions resulted.

On November 29, 1984 D.E.A. Special Agent Jerry Heard participated in the execution of a search warrant at Herbert McDaniel's apartment. Among the items found during the search were a scale, a saucer containing cocaine, a .22 caliber revolver, a .38 caliber revolver, a .357 magnum revolver, and a .12 gauge shotgun. All of the firearms were loaded.

Herbert McDaniel was acquitted on the distribution charge in the first indictment, and the conspiracy charge was dropped by the government. He was convicted by a jury on March 13, 1985 of distributing heroin and cocaine on October 12, 1984.

## I. Fed.R.Evid. 801(d)(2)(E).

Fed.R.Evid. 801(d)(2)(E) provides that "[a] statement is not hearsay if [it is] ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

> It is well-established that an out-of-court declaration of a coconspirator is admissible against a defendant if the government demonstrates (1) that a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy.

*United States v. Bell,* 573 F.2d 1040, 1043 (8th Cir.1978).

> The district court determines the admissibility of the [coconspirator's] statement under Fed.R.Evid. 801(d)(2)(E) and must be satisfied that "it is more likely than not that the statement was made during the course and in furtherance of an illegal association to which the declarant and the defendant were parties." In order to be made in furtherance of the conspiracy, a statement "must somehow advance the objectives of the conspiracy, not merely inform the listener ... of the declarant's activities."
>
> . . . .
>
> ... [A]lthough "the evidence must be independent, *i.e.,* exclusive of the challenged statements, ... it may be circumstantial.... The district court's determination will not be reversed unless [it is] clearly erroneous."

*United States v. DeLuna,* 763 F.2d 897, 908–09 (8th Cir.1985) (citations omitted).

Two statements, both related at trial by Detective Harris, were objected to by Herbert McDaniel and admitted into evidence by the court under Fed.R.Evid. 801(d)(2)(E). The statements were made to Detective Harris during the course of a drug transaction with Howard McDaniel and James Phillips on September 7, 1984. After visiting a residence in an attempt to obtain cocaine to sell to Detective Harris, "Howard McDaniel stated that the cocaine that they had there wasn't what he liked and he said to go down on Harrison and get some really nice cocaine from his brother." James Phillips mentioned Herbert McDaniel by name as a person who could give Detective Harris cocaine and heroin.

■ Substantial circumstantial evidence exists to support a conclusion that a conspiracy to sell drugs existed between Herbert McDaniel, Howard McDaniel and James Phillips on September 7, 1984. Detective Harris purchased drugs from Howard McDaniel and James Phillips on September 7, and from Howard McDaniel on October 5, immediately after Howard McDaniel visited the apartment building at 3244 Harrison. D.E.A. Special Agent Jerry Heard and other witnesses confirmed that

Herbert McDaniel lived in the apartment building, and his black Corvette was observed in the parking lot by Detective Harris during the visits on September 7 and October 5. Detective Harris discussed drug sales with Herbert McDaniel in his apartment at 3244 Harrison on October 25, October 29, October 31 and November 1, and he purchased heroin and cocaine from Herbert and Howard McDaniel in the apartment on October 12. During at least one of the discussions, Herbert McDaniel indicated that he would need to consult with his brother Howard McDaniel, who had gone to California, in order to make sure that Detective Harris was "alright."

It is also clear that the statements by Howard McDaniel and James Phillips were made in order to bring about a drug sale with Detective Harris. Therefore, the statements were made in furtherance of the conspiracy and did not " 'merely inform the listener ... of the declarant's activities.' " *DeLuna,* 763 F.2d at 909. In light of the evidence, we cannot say that the finding of the court that, more likely than not, the statements were made by coconspirators of Herbert McDaniel during the course and in furtherance of the conspiracy was clearly erroneous. The statements were properly admitted pursuant to Fed.R. Evid. 801(d)(2)(E).

*II. Confrontation Clause.*

■ Herbert McDaniel also contends that the statements were admitted into evidence in violation of his rights under the confrontation clause of the sixth amendment. This court has held that "even if a [coconspirator's] statement is admissible under Fed.R.Evid. 801(d)(2)(E), in order to satisfy the requirements of the confrontation clause, the government must demonstrate that the declarant is unavailable and that the statement bears sufficient indicia of reliability." *DeLuna,* 763 F.2d at 909. *See Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *United States v. Massa,* 740 F.2d 629 (8th Cir.1984).

We find that Herbert McDaniel is not entitled to a reversal on confrontation clause grounds for two reasons. First, the record fails to show timely objections to the statements of Howard McDaniel and James Phillips on confrontation clause grounds. A continuing objection to the statement of Howard McDaniel was made before trial, and the statement of James Phillips was timely objected to when it was related at trial by Detective Harris. These objections, however, only addressed the "statement by a coconspirator" issue.

This court has recently held that statements admitted into evidence in violation of the confrontation clause do not constitute grounds for reversal unless a timely and specific objection is made at trial. *United States v. Helmel,* 769 F.2d 1306, 1316 (8th Cir.1985). *See* Fed.R.Evid. 103(a)(1); Fed. R.Crim.P. 51. The rationale supporting this rule is "that had the defendant 'alerted the Government and the district court to the fact that no proof of unavailability had been presented by the Government, that deficiency could have been cured.' " *Helmel,* 769 F.2d at 1317 (quoting *United States v. Gibbs,* 739 F.2d 838, 847 (3d Cir. 1984) (en banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 779, 83 L.Ed.2d 774 (1985)).

■ Second, we cannot say that the admission of the two statements into evidence constituted plain error under Fed.R.Crim.P. 52(b). In order to find plain error, we must conclude that the admission of these statements constitutes a miscarriage of justice. *Helmel,* 769 F.2d at 1317. It is, however, difficult to conclude that the admission of these statements constituted error at all.

At the time of trial, Howard McDaniel was known by all parties to be a fugitive. He was therefore unavailable to testify, and we need only consider the reliability of his statement.

> Factors relevant to determining reliability include: (1) whether the context of the statements and the persons to whom they were made suggest that they were reliable; (2) whether the declarant had a motive for lying or problems with his or her memory, perception or expression; and (3) whether the declarant had personal knowledge of the identity and role of the participants in the crime.

*Massa,* 740 F.2d at 639. *See also DeLuna,* 763 F.2d at 910.

We are satisfied that the statement of Howard McDaniel contained sufficient indicia of reliability. He certainly had knowledge of the identities of Herbert McDaniel and James Phillips and their roles in the conspiracy, and there is no evidence that he had a motive for lying or had problems with his memory. The statement was made spontaneously during the course of a drug transaction to a person thought to be a fellow member of the drug culture. We therefore find no reason to believe that the statement is unreliable.

The admission of the statement of James Phillips presents a somewhat different question because the government has admitted that he was available to testify at trial. On cross-examination, defense counsel elicited testimony from Detective Harris that Howard McDaniel never mentioned Herbert McDaniel by name, that he was unaware of how many brothers Howard McDaniel had, and that he was aware that "brother" was a slang term meaning another black male.[2] In response, the government on redirect elicited testimony from Detective Harris that he knew that Herbert McDaniel was the "brother" referred to because James Phillips mentioned him by name.[3]

By attempting to establish on cross-examination that Detective Harris did not know who the "brother" mentioned by Howard McDaniel was, defense counsel opened the door for inquiry into this subject. Defense counsel knew that the statement of James Phillips would be used by the government to show why Detective Harris knew that the "brother" referred to was Herbert McDaniel, and by opening the door for inquiry into this subject may have waived any objections to the use of James Phillips's statement on redirect. In these situations, the scope of redirect examination is in the sound discretion of the trial judge, and we cannot say that this discretion was abused in allowing Detective Harris to relate the statement of James Phillips. *See United States v. Foley*, 683 F.2d 273, 276–77 (8th Cir.), *cert. denied*, 459 U.S. 1043, 103 S.Ct. 463, 74 L.Ed.2d 613 (1982); *United States v. Allain*, 671 F.2d 248, 252–53 (7th Cir.1982).

*III. Harmless Error.*

██ We also note that, notwithstanding the above discussions, any error that occurred at trial by the admission of these statements into evidence was harmless beyond a reasonable doubt. *See United States v. Hastings*, 461 U.S. 499, 508–09, 103 S.Ct. 1974, 1980–81, 76 L.Ed.2d 96 (1983); *Massa*, 740 F.2d at 640; *Helmel*, 769 F.2d at 1318. Other reliable nonhearsay evidence introduced at trial was more than sufficient to show Herbert McDaniel's participation in the sale of cocaine and heroin to Detective Harris on October 12, 1984. His defense that no sale occurred on October 12 was not damaged by the statements, and they were not so harmful or inflammatory as to prejudice the jury. Therefore, we find that any error resulting from the admission of the statements of Howard

**2.** Cross-Examination:

Q. Do you know who else lives in that building at 3244 Harrison?
A. No, I do not.
Q. Did you check with the landlord there to see who lives there?
A. No, I did not.
Q. How many McDaniel brothers are there?
A. I have no idea.
Q. You're of course familiar with the slang term "brother" referring to other black males?
A. Yes.
....
Q. ;... But he never used the word "Herbert" did he?
A. No.

**3.** Redirect Examination:

Q. Okay. Now, going back to the earlier reports or the earlier meetings that Mr. Fox asked you about, you were in the company of both James Phillips and Howard McDaniel upon several occasions, is that right?
A. Yes, I was.
Q. You said that Howard McDaniel just referred to his brother?
A. Yes.
Q. And you don't recall him using a particular name?
A. No.
Q. Did anyone else use a particular name?
....
Q. Did James Phillips mention any names in your presence?
....
A. Herbert McDaniel.

McDaniel and James Phillips into evidence was harmless and does not warrant a reversal.

## IV. Evidence of Other Crimes and Bad Acts.

■ Herbert McDaniel contends that evidence of the drug transactions which occurred on September 7 and October 5 was improperly admitted by the court. Fed.R. Evid. 404(b) provides that evidence of prior crimes or bad acts is admissible to prove any relevant issue other than the character of the defendant or his propensity toward criminal activity. We have, however, set out the following criteria for the admission of evidence of prior crimes or bad acts: "(1) the evidence is relevant to an issue in question other than that of the character of the defendant, (2) there is clear and convincing evidence that the defendant committed the prior acts, and (3) the potential unfair prejudice of the evidence does not substantially outweigh its probative value." *United States v. Evans*, 697 F.2d 240, 247–48 (8th Cir.), *cert. denied*, 460 U.S. 1086, 103 S.Ct. 1779, 76 L.Ed.2d 352 (1983). *See also United States v. Simon*, 767 F.2d 524, 526 (8th Cir.1985); *United States v. Nabors*, 761 F.2d 465, 470 (8th Cir. May 6, 1985); *United States v. Wagoner*, 713 F.2d 1371, 1375 (8th Cir.1983).

■ "Broad discretion is afforded the trial judge in deciding whether to admit wrongful act evidence and his decision will not be overturned without a clear showing that the requirements have not been met." *Evans*, 697 F.2d at 248. *See also Nabors*, 761 F.2d at 471; *Simon*, 767 F.2d at 526. Herbert McDaniel contends that the evidence is not clear and convincing that he participated in the drug transactions on September 7 and October 5, and that the prejudicial effect of the evidence outweighed its probative value. We have noted that there is substantial circumstantial evidence tending to show that Herbert McDaniel was a participant in those transactions, and it was not an abuse of discretion for the court to find that the evidence was clear and convincing. It was also not an abuse of discretion for the court to find that the probative value of the evidence outweighed its potential prejudicial effect. Therefore, evidence of the drug transactions on September 7 and October 5 was properly admitted by the court under Fed. R.Evid. 404(b).

■ Herbert McDaniel also contends that the court erred in admitting into evidence several firearms, a scale and a quantity of cocaine, all of which were seized from his apartment during the search on November 29. He argues that the evidence was not sufficiently linked to him, and that its probative value was outweighed by its potential prejudicial effect on the jury. *See* Fed.R.Evid. 403. All of these challenged items of evidence were found in Herbert McDaniel's apartment at 3244 Harrison, and we cannot say simply because they were not checked for fingerprints that they are not sufficiently linked to him. We also observe that the scale, the cocaine and the firearms [4] all were of great probative value at trial. It was not an abuse of discretion for the trial judge to admit these items into evidence.

## V. Conclusion.

In summary, we find that the out-of-court declarations of Howard McDaniel and James Phillips were properly admitted into evidence under Fed.R.Evid. 801(d)(2)(E). We also find that Herbert McDaniel's rights under the confrontation clause were not significantly violated by the admission of the statements, and any resulting error was harmless beyond a reasonable doubt.

Finally, we find that all evidence of prior crimes or bad acts was properly admitted under Fed.R.Evid. 404(b), and that all evi-

---

**4.** We recognize that firearms are tools of the trade for drug dealers, and that they are relevant in the proof of a narcotics charge.

Guns constitute important evidence of a narcotics conspiracy. "[S]ubstantial dealers in narcotics keep firearms on their premises as tools of the trade almost to the same extent as they keep scales, glassine bags, cutting equipment and other narcotics equipment."
*United States v. Mourad*, 729 F.2d 195, 201 (2d Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 2700, 86 L.Ed.2d 717 (1985) (citations omitted). *Accord, Simon*, 767 F.2d at 526.

dence seized from Herbert McDaniel's apartment was properly admitted under Fed.R.Evid. 403. Accordingly, the conviction of Herbert McDaniel is affirmed.