UNITED STATES of America, Appellee,

v.

Judd Carver EISENBERG, Appellant.

No. 86–5095.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 15, 1986.

Decided Dec. 31, 1986.

William Tilton, St. Paul, Minn., for appellant.

Elizabeth De La Vega, Minneapolis, Minn., for appellee.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and NICHOL,* Senior District Judge.

NICHOL, Senior District Judge.

Judd Carver Eisenberg appeals from his jury conviction on one count of distribution of cocaine and one count of possession of cocaine with intent to distribute, both in violation of 21 U.S.C. section 841(a)(1). Eisenberg now raises a number of issues on appeal: 1) That the district court[1] erred in denying his pretrial motion to suppress; 2) That several evidentiary errors were made including the admission of a co-conspirator's statement; refusal to allow an expert witness; and admission of Exhibit 28, a scrap of paper found in the defendant's wallet upon arrest. Eisenberg further claims that the prosecutor committed reversible error through improper cross-examination of a defense witness. Lastly, Eisenberg contends that the evidence is insufficient to support the jury's verdict. We affirm the conviction.

I. FACTS

The record, construed in the light most favorable to the verdict, reveals that on August 12, 1985, a number of arrests resulted from a sale of cocaine that transpired between an undercover police officer and a man by the name of David Vanzo. One of those arrested was the appellant, Eisenberg.

Officer Kenneth VandeSteeg of the Minneapolis police department met Vanzo at a local gymnasium where Vanzo stated that he could sell VandeSteeg a pound of cocaine. After some negotiations, arrangements were made to complete the transaction. VandeSteeg followed Vanzo to a restaurant parking lot where they met up with Special Agent Pederson of the Drug Enforcement Administration (DEA) who was posing as VandeSteeg's money man. From this point forward, the transaction was under constant surveillance by a number of law enforcement personnel. The officers followed Vanzo to the residence of his drug source, 737 Van Buren Way in Hopkins, Minnesota, the apartment of Wayne Aronson. Once at the residence, the officers remained outside while Vanzo entered. When he returned, Vanzo was carrying a canister and told the officers to follow him back to the parking lot where the transaction was completed. Before he was arrested, the officers learned that Vanzo was only able to supply eight ounces of cocaine but that the remainder was due to arrive shortly.

Soon afterward, Aronson was arrested in his apartment and was taken to this same parking lot. Knowing that only eight ounces of cocaine had been delivered, Aronson was asked where the remaining amount could be found. Aronson, fully advised of his rights, stated that his sources, two white males, were due to arrive shortly with the remaining cocaine and that they would be in a 1977 or 1978 red car. He added that he thought that one of the men was from North or South Carolina. This information was relayed back to the officers who had remained at the Aronson apartment. Moments later, two officers noticed a red vehicle as it began to turn onto the street in the direction of Aronson's apartment. The officers observed two males in the vehicle and it appeared to the officers that when the occupants noticed the police near Aronson's, the vehicle did not complete the turn, but rather, turned back onto the street on which it had been traveling. The officers radioed that they were in pursuit of a vehicle matching the description provided by Aronson. After following the vehicle for several miles, the officers stopped the vehicle and the occupants. The passenger Eisenberg, and the driver Phil Hoffman, were asked to exit the vehicle. Both parties cooperated and when the officers asked where he was from, Ei-

---

* The Honorable Fred J. Nichol, Senior United States District Judge, District of South Dakota, sitting by designation.

1. The Honorable Diana E. Murphy, United States District Judge, District of Minnesota.

senberg answered, "North Carolina."[2] At this time, both parties were placed under arrest. A search of the interior of the vehicle was conducted and when the key to the trunk could not be found, Eisenberg was searched and the trunk key was found in Eisenberg's front shirt pocket. In the trunk, the officers found a shoe box containing nine baggies of cocaine.

A search of the Aronson apartment also produced several baggies, some with only tracings of cocaine and one with a small amount of cocaine. Eisenberg's fingerprints were found on one of the baggies found at Aronson's apartment and on five of the nine baggies found in the shoe box as well as on the shoe box itself.

Eisenberg and Hoffman were roommates and resided in southern California near Los Angeles. They had arrived in Minneapolis the day before the arrest after traveling under fictitious names from San Francisco along with a man named Steve. Hoffman's parents lived in Minneapolis and the evidence showed that the three travelers went directly to the Hoffman parental home from the airport where they left their luggage. They then went to a nearby Thrifty Scot Motel where Eisenberg registered, using the same fictitious name as his airline ticket, and paid for one night's lodging in cash. Sometime later, Eisenberg watched as Steve removed several baggies of cocaine which had been strapped to his body and worn under a pair of woman's panty hose. Eisenberg then picked up several of the baggies and examined their contents.

Eisenberg testified that he had been at Aronson's apartment on the day of his arrest. Eisenberg, Hoffman and Steve had traveled to Aronson's and upon arrival, Steve removed Hoffman's briefcase from the trunk and all three of them proceeded into Aronson's apartment. Eisenberg claims to have immediately gone into the bathroom and when he returned, they left.

Additional evidence demonstrated that earlier in this same week Aronson had been in contact with another undercover police officer, Special Agent Michele Leonhart, DEA. Aronson informed Leonhart that his source was due to arrive in Minneapolis with a large quantity of cocaine and asked if Leonhart was interested in making a purchase. Aronson's telephone records indicate that several calls were placed the week of August 6–9 to a telephone number listed to 2901 Grayson Avenue, Santa Monica, California. This is the California address of Eisenberg and Hoffman.

After the arrest of Eisenberg and Hoffman, a search of the Hoffman parental home was conducted. This search produced a box of baggies identical to those found in the shoe box containing nine baggies of cocaine and to those found in Aronson's apartment containing tracings of cocaine. The baggies were confiscated from a suitcase that also housed Eisenberg's shirts.

## II. DISCUSSION

### A. Suppression Issue

The district court, through its adoption of the magistrate's[3] report and recommendation, following the hearing on the pretrial motion to suppress, determined that the initial stop of the vehicle was a valid investigatory stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The court further held that once the officers established that Eisenberg was from North Carolina (the information supplied by Aronson having thus been further corroborated), probable cause existed to lawfully arrest Eisenberg pursuant to *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949).

In reviewing the district court's determination made in the context of a motion to suppress, we apply a clearly erroneous standard of review. *United States v. Lewis*, 738 F.2d 916, 920 (8th Cir.1984), *cert. denied*, 470 U.S. 1006, 105 S.Ct. 1362, 84

---

**2.** A North Carolina driver's license was confiscated from Eisenberg's wallet confirming this fact.

**3.** The Honorable Floyd E. Boline, United States Magistrate, District of Minnesota.

L.Ed.2d 383 (1985). Under this standard, we must affirm the decision of the district court unless it is not supported by substantial record evidence, it reflects an erroneous view of the applicable law, or upon review of the entire record, we are left with a definite and firm conviction that a mistake has been made. *Id.; See also, United States v. McBride*, 801 F.2d 1045, 1046 (8th Cir.1986). Eisenberg's claim is that the district court erred in its application of the law. We disagree.

■ It is now firmly established that police officers may stop persons in the absence of probable cause under limited circumstances. *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 679, 83 L.Ed.2d 604 (1985); *United States v. Doffin*, 791 F.2d 118 (8th Cir.1986) (per curiam); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Officers may stop a moving vehicle, "to investigate a reasonable suspicion, based on specific and articulable facts, that its occupants are or have been involved in criminal activity." *United States v. Doffin*, 791 F.2d at 120. This reasonable suspicion may be based on a tip from an informer. *United States v. McBride*, 801 F.2d at 1047; *Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). The degree of reliability of an informant that must be shown to justify an investigatory stop is less than that required to establish probable cause. *McBride* at 1047.

This circuit's recent decision in *McBride* provides the correct analysis to apply when presented with facts similar to those presented here. In *McBride*, the court addressed the question of the degree to which police officers may rely on an anonymous tip in forming the reasonable, articulable suspicion necessary to justify an investigatory stop. *McBride*, 801 F.2d at 1046. The police had received a tip from an anonymous caller stating that a man had just left his house with four ounces of heroin and was driving a small silver foreign car. The caller provided the police with a license number and the direction in which the car was headed. The police checked the license number and found that it had been issued to a gray or silver Volkswagen, a car very similar to the car described by the caller. Almost five hours later, the vehicle was spotted about eight blocks from the intersection mentioned by the caller. The police stopped the vehicle and when they observed suspicious behavior on the part of the occupants and noticed drug paraphernalia in the vehicle, the occupants were arrested. The district court granted the defendant's motion to suppress the evidence seized from the vehicle, finding that the police had no basis for their action except the anonymous tip and that such a tip was insufficient to justify the police action. *Id.* This court reversed, holding that an anonymous tip *can* support a reasonable, articulable suspicion of criminal activity: Each tip is to be considered on its own merits to see whether it bears sufficient indicia of reliability to support the action taken by the police. *Id.* at 1047, 1048.

The factors relied upon by this court in validating the anonymous tip in *McBride* included 1) the basis of the informant's information (firsthand knowledge of the facts) and 2) the fact that the information had been corroborated by police investigation. Based on their evaluation of the tip under the totality of the circumstances, the action taken by the police was found to be justified. *Id.* at 1048, 1049.

■ Eisenberg's claim is that since the police did not first establish Aronson's reliability and credibility as an informant, any reliance on the information he provided could not justify the action of stopping the vehicle and arresting the occupants. However, when the information provided by Aronson is considered in light of the totality of the circumstances, it is clear that the information "bore indicia of reliability sufficient to support the given police action." *McBride*, 801 F.2d at 1047. The police knew firsthand of a drug transaction involving Aronson. The police were also aware of the fact that the cocaine that was delivered was eight ounces short of that promised. Aronson had firsthand knowl-

edge of the identity of his drug source. The information provided by Aronson, that two white males in a 1977 or 1978 red car were due to arrive shortly, was corroborated by the police: Eisenberg and Hoffman arrived on the scene within minutes of the police receiving the information; the car was similar in color; and there were two male occupants. In addition, the police personally observed the suspicious behavior of the occupants when the car suddenly changed directions and did not complete the turn toward Aronson's.[4] The almost immediate corroboration of Aronson's information along with the police officers' own personal observations provided the police with a reasonable, articulable suspicion that the vehicle's occupants were involved in criminal activity and thus the initial stop of the vehicle was lawful.

Eisenberg, in effect, argues that the initial stop was not investigatory, but rather, amounted to an arrest and thus could only be justified by the more stringent probable cause analysis. "An action tantamount to arrest has taken place if the officers' conduct is more intrusive than necessary for an investigative stop." *United States v. Rose,* 731 F.2d 1337, 1342 (8th Cir.), *cert. denied,* 469 U.S. 931, 105 S.Ct. 326, 83 L.Ed.2d 263 (1984). The officers may take such steps as are " 'reasonably necessary to protect their personal safety and to maintain the status quo' so that the limited purpose of the stop may be achieved." *United States v. Jones,* 759 F.2d 633, 636–37 (8th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 113, 88 L.Ed.2d 92 (1985) (*quoting United States v. Hensley,* 469 U.S. 235, 105 S.Ct. at 684). The fact that the officers approached the Hoffman vehicle with weapons drawn does not per se transform the stop into an arrest. The police officers involved were all experienced narcotic officers and we cannot say that they acted unreasonably under the

circumstances. *See, United States v. Jones,* 759 F.2d at 638–39. Prior to arrest, the officers questioned Eisenberg and established that Eisenberg was from North Carolina.[5] Probable cause then existed to make the arrest. *See, Brinegar v. United States,* 338 U.S. at 175–76, 69 S.Ct. at 1310–11 (probable cause exists where facts and circumstances within the officer's knowledge and of which they had reasonable trustworthy information are sufficient themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.)

Even assuming that the stop of the vehicle was in fact tantamount to an arrest, the action of the police was justified. In *United States v. Reivich,* 793 F.2d at 957 (8th Cir.1986), this court addressed a very similar situation. In *Reivich,* the informants were two arrestees who had provided the police with information as to their drug source. The court, again applying a totality of the circumstances analysis, held that an informant's reliability, veracity, and basis of knowledge are relevant factors to consider, but are *not independent essential elements* necessary to support a finding of probable cause. *Id.* at 959 (emphasis added). The court found that the information provided by the arrestees was based on firsthand knowledge and was generally corroborated by police. Further, the information provided was against the penal interests of the informants and this was viewed as lending greater reliability to the information. *Id.; See also, United States v. Harris,* 403 U.S. 573, 583–84, 91 S.Ct. 2075, 2081–82, 29 L.Ed.2d 723 (1971).

The factors present in *Reivich* are equally present here. Aronson provided firsthand information that was almost immediately corroborated by the police and this information was against his penal interests. Thus, the fact that Aronson's reliability was not established prior to the police ac-

---

4. It is immaterial that the details corroborating the informant's tip are as consistent with innocent conduct as with illegal activity. *McBride,* 801 F.2d at 1047; *See also, United States v. Reivich,* 793 F.2d 957, 960 (8th Cir.1986).

5. *Cf., United States v. Barber,* 557 F.2d 628, 632 (8th Cir.1981), where the *failure* to ask any questions was seen to be indicative of an *arrest, not* an *investigatory stop.*

tion does not negate a finding of probable cause to stop and arrest.

■ The subsequent search of the car was also lawful. The Supreme Court in *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982), stated that, "[I]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *See also, United States v. Jones*, 687 F.2d 1265, 1266 n. 1 (8th Cir.1982). The search of the trunk was permissible and the cocaine seized as a result was properly ruled to be admissible. The denial of Eisenberg's motion to suppress was not clearly erroneous and is affirmed.

B. Admission of Co-conspirator's Statement

During the search of the Hoffman parental home, several items were seized including a letter found in Phil Hoffman's suitcase. The letter was addressed to "Judd" and was found in an envelope addressed to Phil Hoffman and had a return address of "Pantera Specialist." The admissibility of this letter was the subject of two evidentiary hearings. The government chose not to offer the letter during its case-in-chief and in fact, the letter was never offered nor received into evidence. Rather, a portion of the letter [6] was read to the jury as part of a question addressed to Eisenberg during cross-examination. It is to this use of the letter that Eisenberg objects. He claims that the letter was inadmissible hearsay and did not fall within the co-conspirator's statement exemption from the hearsay rule. Fed.R.Evid. 801(d)(2)(E).[7]

■ Before the court could address the admissibility of this letter, the letter had to be authenticated or identified by sufficient evidence to support a finding that the matter in question was what the government claimed it to be: a letter written by Phil Hoffman. Fed.R.Evid. 901(a).[8] The "genuineness" of a document can be established by circumstantial evidence. *United States v. Lewis*, 759 F.2d 1316, 1338 (8th Cir.), *cert. denied sub nom., Milburn v. United States*, — U.S. —, 106 S.Ct. 406, 407, 88 L.Ed.2d 357 (1985). The contents of a document, its substance, appearance or other distinctive characteristics taken in conjunction with the circumstances of each case can also help authenticate a document. Fed.R.Evid. 901(b)(4).[9] The trial court is vested with considerable discretion in determining the admissibility of evidence and its decision is entitled to great deference on appeal. *United States v. Lewis*, 759 F.2d at 1336; *United States v. Swarek*, 656 F.2d 331, 337 (8th Cir.), *cert. denied*, 454 U.S. 1034, 102 S.Ct. 573, 70 L.Ed.2d 478 (1981).

■ Here the district court pointed to the following circumstantial evidence in support of its finding of authentication of the letter. The letter was found among Hoffman's possessions and in his suitcase; the letter was in an envelope addressed to Hoffman with a return address of "Pant-

6. The portion of the letter read to the jury reads as follows: "Also today you talk about traveling with our package yourself instead of someone else. You talk about being so careful and taking precautions. This is the most stupidist thing I have ever heard of. You try to pinch money in very poor ways. I wish you would leave those decisions to me. Believe me, I know what is best. Did I not make some right decisions beforehand when the other operations waited too long and went down. A hell of a good partner you'd be if you went down with our investment and messed your life over. I think you could expect the fact that I care about your life as a person and not just the money involved that would be lost."

7. Fed.R.Evid. 801(d)(2)(E): A statement is not hearsay if—(E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

8. Fed.R.Evid. 901(a): The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

9. Fed.R.Evid. 901(b)(4): ... the following are examples of authentication or identification conforming with the requirements of this rule: (4) Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

era Specialist" and the evidence demonstrated that Hoffman owned a Pantera sportscar; the letter mentioned a brother facing a jail sentence and the evidence showed that Hoffman's brother Michael had recently been sentenced; there was reference to a trip and a package and the evidence showed that Hoffman, Eisenberg and Steve had recently traveled from San Francisco with Steve carrying several packages of cocaine. We find that the district court did not abuse its discretion in upholding the authenticity of this letter.

Even though the circumstantial evidence supported the authenticity of this document, it should not have been allowed to be read into evidence if it constituted hearsay. *United States v. Helmel,* 769 F.2d 1306, 1312 (8th Cir.1985). The district court ruled that the portion of the letter read was not offered to prove the truth of the matter asserted therein and therefore it was not hearsay as defined by Fed.R.Evid. 801(c) [10], and a cautionary instruction was given to the jury.[11] The court did note that one sentence could pose a potential hearsay problem, but ruled that this one sentence was admissible as a co-conspirator's statement made during the course and in furtherance of the conspiracy.[12]

We agree with the district court's assessment that the majority of the used portion of the letter was not offered to prove the truth of the matter asserted therein. We also agree that the questionable sentence falls within the co-conspirator's statement exemption from the hearsay rule.

■■■■ To fulfill the requirements of the co-conspirator's statement exemption, the government must demonstrate that (1) a conspiracy existed; (2) that the defendant and declarant were part of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy. *United States v. Lewis,* 759 F.2d at 1338–39; *United States v. Bell,* 573 F.2d 1040, 1043 (8th Cir.1978). The evidence supporting these requirements must be independent of the challenged statements, although the evidence may be circumstantial. *United States v. DeLuna,* 763 F.2d 897, 908–09 (8th Cir.), *cert. denied sub nom., Thomas v. United States,* —— U.S. ——, 106 S.Ct. 382, 383, 88 L.Ed.2d 336 (1985). The government must prove each of the requirements by a preponderance of the evidence: The court must be satisfied that it is more likely than not that the statement was made during the course and in furtherance of an illegal association to which the declarant and defendant were parties. *United States v. Bell,* 573 F.2d at 1044; *United States v. Bentley,* 706 F.2d 1498, 1506 (8th Cir.1983), *cert. denied,* 467 U.S. 1209, 104 S.Ct. 2397, 81 L.Ed.2d 354 (1984). The district court's determination will not be reversed unless it is clearly erroneous. *United States v. McDaniel,* 773 F.2d 242, 244 (8th Cir.1985) (*quoting United States v. DeLuna,* 763 F.2d at 908–09).

■■■■ There is little question that the government met the first two requirements. There is sufficient independent evidence of a conspiracy in this case. Apart from the letter, there is evidence that the parties (Eisenberg and Hoffman and Steve) traveled from California under false names and with Steve carrying several baggies of cocaine the day prior to their arrest. Upon arriving in Minneapolis and despite having left their luggage at the home of Hoffman's parents, the parties registered at a nearby motel, again under a fictitious name. The parties traveled together to the home of Aronson and delivered cocaine. Eisenberg's fingerprints were found on a

---

**10.** Fed.R.Evid. 801(c): "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

**11.** The jury was instructed as follows: "At this point, members of the jury, I want to make a comment about the statements that were read to you from this letter. You are instructed that the

statements that were read to you by Ms. de la Vega are not being admitted to prove that what was said is true, but only to show that the statements were made."

**12.** The sentence noted by the court as posing a potential hearsay problem stated: "Also today you talk about traveling with our package yourself instead of someone else."

baggie containing tracings of cocaine found at Aronson's. Eisenberg, upon his arrest, had the key to the trunk in which additional cocaine was confiscated. Eisenberg's fingerprints were found on five of the nine baggies of cocaine taken from the trunk. This evidence is sufficient to meet the requirements that a conspiracy existed and to demonstrate that Eisenberg and Hoffman were members of the conspiracy. *See, United States v. Lewis,* 759 F.2d 1316 (*quoting United States v. Stolle,* 553 F.2d 1109, 1117 (8th Cir.), *cert. denied,* 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977) (in demonstrating the existence of a conspiracy, the government must only demonstrate a likelihood of an illicit association between the declarant and the defendant).

Although the government could not prove that Hoffman was the author of the letter through the use of handwriting experts, such absolute proof is not essential to the invocation of the co-conspirator rule. *United States v. Helmel,* 769 F.2d at 1313; *See also, United States v. DeGudino,* 722 F.2d 1351, 1356 (7th Cir.1983). "What is essential is that the government show that the unknown declarant was more likely than not the conspirator." *Helmel* at 1313. Some of the same factors used to authenticate the document also support a finding that Hoffman was the declarant. *See, United States v. Lewis,* 759 F.2d at 1339. The writing was found among Hoffman's possessions and in an envelope addressed to Hoffman. The portions of the letter which were not read by the government further support a finding that Hoffman was the declarant. The district court was not clearly erroneous in finding that Hoffman was the author of the letter. *See, United States v. Helmel,* 769 F.2d at 1315.

The requirement that the statement be made during the course and in furtherance of the conspiracy presents a closer question. After careful review of the entire record, we are not left with a definite and firm conviction that the district court erred in finding this requirement was met. This final requirement is to be afforded a broad construction. *United States v. Lewis,* 759 F.2d at 1340; *United States v. Schepp,* 746 F.2d 406, 411 (8th Cir.1984), *cert. denied,* 469 U.S. 1215, 105 S.Ct. 1190, 84 L.Ed.2d 336 (1985). In addition, this court has upheld the admission of statements made by a co-conspirator which were designed to allay apprehension and insure good relationships for future business. *United States v. Krevsky,* 741 F.2d 1090, 1095 (8th Cir.1984); *United States v. Overshon,* 494 F.2d 894, 899 (8th Cir.), *cert. denied,* 419 U.S. 853, 95 S.Ct. 96, 42 L.Ed.2d 85 (1974); *United States v. Ammar,* 714 F.2d 238, 252 (3rd Cir.), *cert. denied sub nom., Stillman v. United States,* 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983) ("statements between coconspirators which provide reassurance, serve to maintain trust and cohesiveness among them, or inform each other of the current status of the conspiracy further the ends of the conspiracy and are admissible").

■ The requirement that the statement be made during the course of the conspiracy is the most difficult. But even assuming, however, that this letter was not written during the course of the conspiracy, we conclude that any error in its admission was harmless. *See, United States v. McDaniel,* 773 F.2d at 246–47; *United States v. Schepp,* 746 F.2d at 411; *United States v. Bentley,* 706 F.2d at 1506. This letter was read to the jury as part of one question during cross-examination of Eisenberg. It was never received into evidence. In addition, the jury was instructed that the letter was *not* offered to prove the truth of the statements but only to show that the statements were made. "It is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless." *United States v. Hastings,* 461 U.S. 499, 509, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983). We find that, if the use of the letter was error, such use was harmless beyond a reasonable doubt.[13]

---

**13.** Eisenberg points to the fact that the government also referred to the letter in its closing argument in such a way as to demonstrate that the letter was in fact offered to prove the truth

*See, United States v. McDaniel,* 773 F.2d at 246.

■ Eisenberg now contends that if the letter was erroneously allowed into the trial, the letter constituted hearsay and he was denied his constitutional right of confrontation. "[S]tatements admitted into evidence in violation of the confrontation clause do not constitute grounds for reversal unless a timely and specific objection is made at trial." *McDaniel* at 245. Eisenberg raised no such objection at trial and thus he is not entitled to raise it for the first time on appeal.

**C. Other Issues**

Two of the remaining issues presented by Eisenberg also involve the admission of evidence. It is clearly established in this circuit that the trial court's determination whether evidence is relevant is subject to reversal only for an abuse of discretion. *Smalley v. United States,* 798 F.2d 1182, 1189 (8th Cir.1986); *United States v. Lewis,* 759 F.2d at 1328. "This standard applies equally where expert testimony is involved." *Smalley* at 1189.

■ Eisenberg claims that the district court erred in denying his motion for a continuance necessitated by the unavailability of a witness he wanted to call as an expert. The district court ruled that the continuance was unnecessary because there was no showing that the evidence was necessary or relevant. The "expert" witness for Eisenberg was going to testify to the distinction between the use and sale of steroids (steroids culture) and the use and sale of cocaine (cocaine culture). Eisenberg himself had presented direct evidence on this subject through his own oral testimony as well as the admission of several articles on the subject of steroids. In addition, the defense had cross-examined one of the government witnesses on this same subject. Eisenberg was not prevented from introducing sufficient evidence on this topic and we find no abuse of discretion by the district court in its determination that any additional information on this topic would be cumulative and irrelevant.

■ We also find no abuse of discretion in the court's decision to admit Exhibit 28, the scrap of paper containing names and numbers found in Eisenberg's wallet at the time of his arrest. Eisenberg identified the paper and its contents prior to its admission and the evidence was appropriate for cross-examination in that it addressed the issues developed during direct examination and also addressed the issue of Eisenberg's credibility. The permissible extent of cross-examination is a matter within the discretion of the district court. *United States v. Schepp,* 746 F.2d at 410. "Cross-examination may embrace any matter germane to direct examination, qualifying or destroying it, or tending to elucidate, modify, explain, contradict or rebut testimony given by the witness." *United States v. Gleason,* 766 F.2d 1239, 1246 (8th Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 801, 88 L.Ed.2d 777 (1985), (*quoting Roberts v. Hollocher,* 664 F.2d 200, 203 (8th Cir. 1981)).

■ Eisenberg also contends that the government committed reversible error when, during cross-examination of defense witness Aronson, the government asked questions which implied that Aronson was not credible and that his lack of credibility had been judicially determined at his suppression hearing.[14] The trial court immedi-

---

of the matter asserted. The district court had broad discretion in controlling closing arguments and absent a showing of abuse of discretion, this court will not reverse. *United States v. Schepp,* 746 F.2d at 411. We find no abuse of discretion here. *See, United States v. Wilson,* 532 F.2d 641, 647 (8th Cir.), *cert. denied,* 429 U.S. 846, 97 S.Ct. 128, 50 L.Ed.2d 117 (1976).

**14.** The questions asked by the government consisted of the following:

Q: And it was specifically found that your testimony was not credible and their testimony was credible, wasn't it?
Objection: Without foundation, Your Honor.
COURT: Sustained.
Q: Your motion was denied, wasn't it?
Objection: Irrelevant and without foundation.
COURT: Sustained.

ately sustained defense objections to these questions and the questions were never answered. We find that this conduct by the government, while not condoned, was harmless and did not affect Eisenberg's substantial rights. *See, United States v. Zabel,* 702 F.2d 704, 710 (8th Cir.), *cert. denied sub nom., Gukeisen v. United States,* 464 U.S. 934, 104 S.Ct. 339, 78 L.Ed.2d 308 (1983); Fed.R.Crim.P. 52(a).

■ Lastly, Eisenberg claims that the evidence was insufficient to support the jury's verdict. It is well established that the evidence is to be viewed in the light most favorable to the verdict; that evidentiary conflicts are resolved in favor of the government; and we must sustain the verdict if supported by substantial evidence. *United States v. Long Elk,* 805 F.2d 826, 829 (8th Cir.1986); *Smalley v. United States,* 798 F.2d at 1188. It is the function of the jury, not an appellate court, to resolve conflicting testimony or judge the credibility of the witnesses. *Id.*

We find that the evidence in this case supports the jury's verdict. Eisenberg's fingerprints were found on five of the nine baggies of cocaine that were confiscated from the trunk of a vehicle in which he was a passenger and it was Eisenberg who held the key to that trunk. In addition, his fingerprints were found on a baggie containing tracings of cocaine that was found in Aronson's apartment. It was established that Eisenberg traveled under a false name and maintained this pretense when he registered at a motel upon arrival in Minneapolis, despite having a place to stay in the home of Hoffman's parents and no luggage was taken to the motel. Evidence showed that Aronson had placed phone calls to Eisenberg's home address the week before the arrest and had told an undercover officer that his source was due to arrive with a large quantity of cocaine. The essential elements of an offense may be established by circumstantial evidence. *United States v. Long Elk,* at 829. When the evidence is viewed in its entirety, it is sufficient to support the verdict.

The judgment of conviction is affirmed.